UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BRANDON BROWN,

                                        Plaintiff,


v.                                                      9:24-cv-1474
                                                        (DNH/TWD)


NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUEPRVISION, et al.,

                                        Defendants.

_____

APPEARANCES:                                OF COUNSEL:

BRANDON BROWN
*Plaintiff, pro se*
22-R-0276
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

NEW YORK STATE ATTORNEY GENERAL          ERIN P. MEAD, ESQ.
*Attorney for Defendant*
NYS Office of The Attorney General
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

## I.    INTRODUCTION

        This matter was referred for a report and recommendation by the Hon. David N. Hurd,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Brandon Brown ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 while in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS").  *See generally*, Dkt. No. 1.[1]  Currently before the Court is a motion for summary

judgment, filed by Defendant Imam Fakhr ("Defendant").  *See generally*, Dkt. No 18.  For the

reasons set forth below, the undersigned recommends the Defendant's motion be denied.

## II.    BACKGROUND

Plaintiff commenced this action by filing a complaint on December 5, 2024, while

incarcerated at Mohawk Correctional Facility.  *See generally*, Dkt. No. 1.  By Decision and

Order dated February 26, 2025, the Hon. David N. Hurd, United States District Judge, granted

Plaintiff's application to proceed *in forma pauperis* and found Plaintiff's (1) Religious Land Use

and Institutionalized Persons Act ("RLUIPA") claim against the Defendant in his official

capacity; (2) First Amendment free exercise claim against Defendant in his individual capacity;

(3) First Amendment retaliation claim against Defendant in his individual capacity; and (4)

Fourteenth Amendment equal protection claims against Defendant in his individual capacity

survived *sua sponte* review and required a response.  *See* Dkt. No. 8 at 15.

On June 10, 2025, Defendant filed a pre-answer motion for summary judgment and/or to

dismiss.  Dkt. No. 18.  Defendant argues Plaintiff failed to exhaust his administrative remedies

before commencing this action, therefore, dismissal of the complaint is warranted under Rules 56

and/or 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 18-9 at 7-14.  A notice of

the consequences of failing to respond to a summary judgment motion was sent to Plaintiff's

address at Mohawk Correctional Facility.  Dkt. No. 19.

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the
Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are
reproduced exactly as they appear in the original and errors in spelling, punctuation, and
grammar have not been corrected.

On June 16, 2025, Plaintiff filed a letter requesting an extension, Dkt. No. 21, which was granted by Text Order, Dkt. No. 22. The June 17, 2025, Text Order extending Plaintiff's response deadline to July 31, 2025, was subsequently returned as undeliverable, Dkt. No. 23. Plaintiff has not filed a response to Defendant's motion or sought an additional extension of time to do so. *See generally*, Docket. Additionally, Plaintiff has not filed a change of address. *Id*. Defendant submitted a reply in further support of the motion for summary judgment. Dkt. No. 27.

## III. LEGAL STANDARD

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that

context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994).  However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

### B.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Whether the plaintiff has exhausted his administrative remedies is a question of law . . . . Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer." *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *5 (N.D.N.Y. Nov. 17, 2020) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted*, 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds*, *Ross v. Blake*, 578 U.S. 632 (2016).  Furthermore, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  In order to properly exhaust his administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).

DOCCS has a well-established Inmate Grievance Program ("IGP"), set forth in 7

N.Y.C.R.R. § 701 *et seq*.

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2,

2023) (additional citation omitted); *see also Jackson v. Jackson*, No. 16-CV-8516 (PMH), 2021

WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021) (explaining, "when a grievance concerns staff

harassment, DOCCS procedures provide for an expedited review that allows for the complaint to

bypass IGRC review and proceed before the Superintendent in the first instance.") (citing 7

N.Y.C.R.R. § 701.8).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its

own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Specifically, the

exhaustion requirement contained in § 1997e(a) "hinges on the 'availability' of administrative

remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id*. (citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes, holding:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, . . . when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id*. at 643-44. In these situations, exhaustion is not required. Additionally, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive . . . ." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016).

## IV.    ANALYSIS

The facts giving rise to Plaintiff's constitutional claims occurred from the time Plaintiff arrived at Mohawk Correctional Facility in January of 2023, and were alleged to be "ongoing" at the time he filed his complaint on December 5, 2024. *See* Dkt. No. 1 at 7. In support of the instant motion for summary judgment, Defendant asserts IGP records demonstrate Plaintiff filed three grievances concerning the allegations in his complaint: (1) grievance number MHK-0018-23, filed February 15, 2023; (2) grievance number MHK-0143-23, filed October 25, 2023; and (3) grievance number MHK-0017-25, filed January 29, 2025. Dkt. No. 18-2 at 5; *see also* Dkt. No. 18-9 at 12; Dkt. No. 18-4.[2] Defendant further avers: (1) Plaintiff did not appeal the IGRC's

---

[2] More specifically, Defendant asserts IGP records indicate Plaintiff filed seven grievances while housed at Mohawk Correctional Facility, "but only three with respect to religious services . . . ." Dkt. No. 18-9 at 12.

response to grievance MHK-0018-23 to the facility's superintendent; (2) Plaintiff did not appeal the IGRC's dismissal of grievance MHK-0143-23 to the IGRC supervisor or file a second grievance to contest the dismissal; and (3) grievance MHK-0017-25 was filed over a month *after* Plaintiff commenced this action.  *See* Dkt. No. 18-9 at 12-13; Dkt. No. 18-2 at 5-6.  Therefore, Defendant argues "Plaintiff either failed to fully exhaust or failed to submit grievances prior to commencement of this action," and dismissal for failure to exhaust as required by the PLRA is appropriate.  Dkt. No. 18-9 at 14.

However, it is well established that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000); *see also*, *e.g.*, *Sorrentino v. Annucci*, No. 9:23-CV-00582 (LEK/TWD), 2025 WL 1033687, at *3 (N.D.N.Y. Feb. 13, 2025), *report and recommendation adopted sub nom.*, *Sorrentino v. Tierney*, No. 9:23-CV-582 (LEK/TWD), 2025 WL 841475 (N.D.N.Y. Mar. 18, 2025).  As a result, denial of a pre-answer motion for summary judgment on exhaustion grounds is appropriate where issues remain as to the availability of administrative remedies during the relevant period.  *See*, *e.g.*, *Hardee v. Thomas*, No. 9:23-CV-1142 (LEK/TWD), 2025 WL 777268, at *5 (N.D.N.Y. Feb. 13, 2025) (recommending denial of pre-answer motion for summary judgment on the basis of exhaustion where the record was "incomplete as to the availability of administrative remedies" at the correctional facilities where the Plaintiff was housed following the subject incident), *report and recommendation adopted*, 2025 WL 773577 (N.D.N.Y. Mar. 11, 2025); *Adams v. Berkman*, No. 9:24-CV-0873 (MAD/TWD), 2025 WL 2548797, at *6 (N.D.N.Y. July 11, 2025) (recommending denial of pre-answer motion for summary judgment where the record was, "incomplete as to the availability of Plaintiff's administrative remedies following the alleged . . .

8

incident.  There are certainly issues that call for further factual development."), *report and recommendation adopted*, 2025 WL 2318706 (N.D.N.Y. Aug. 12, 2025).

Such is the case here given Plaintiff's statements regarding grievances in his complaint. *See generally*, Dkt. No. 1 at 5-6.  Specifically, Plaintiff stated in his complaint that "Over the last 22 months I have written *dozens* of Grievances most go unanswered."  *Id*. at 5 (emphasis added). Plaintiff's allegations contradict the IGP records submitted by the Defendant indicating Plaintiff had submitted two grievances regarding his religious rights prior to commencing this action.  *See* Dkt. No. 18-9 at 12-13; Dkt. No. 18-2 at 5-6.  Next, Plaintiff has alleged "on October 15th the Imam stooped as low as to remove our Grievances from the pile on the desk and continues his under handed tactics."  Dkt. No. 1 at 5.  This allegation raises a question of fact as to whether Plaintiff was thwarted from utilizing the grievance process.  *See generally*, *Ross*, 578 U.S. at 643-44.  Furthermore, in the December, 2024, complaint, Plaintiff reported he had grieved the denial of service and congregation that had occurred on October 7, 2024, yet the IGP records submitted by Defendant indicate no religious grievances were filed by Plaintiff from October 25, 2023, until after this action had commenced.  *Compare* Dkt. No. 1 at 5-6, *with* Dkt. No. 18-2 at 5-6.

Additionally, the Supreme Court recently held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment."  *Perttu v. Richards*, 605 U.S. 460, 479 (2025).  Here, given Plaintiff's allegation that Defendant Imam interfered with the exhaustion process by "remov[ing] . . . Grievances from the pile," Dkt. No. 1 at 5, and that he was subjected to "an effort to suppress, lose, and otherwise ignore [his] grievances," Dkt. No. 1 at 6, it appears the exhaustion issue may

be intertwined with the merits of Plaintiff's constitutional claims protected by the Seventh Amendment.

In sum, Plaintiff's complaint contains allegations regarding the IGP at Mohawk Correctional Facility which raise questions of fact as to the availability of administrative remedies precluding summary judgment relief at this juncture. Accordingly, the undersigned recommends Defendant's motion be denied. In so recommending, the undersigned recognizes Plaintiff has not provided any evidence substantiating his efforts to file grievances as reported in the complaint. Nevertheless, because Plaintiff has not been afforded the opportunity to conduct discovery, dismissal is not appropriate. *See, e.g.*, *Adams*, 2025 WL 2548797, at *6 (N.D.N.Y. July 11, 2025) (recognizing the plaintiff had "not provided any further evidence substantiating his efforts to file these supposed grievances," but recommending denial of the defendant's dispositive motion because "unlike the case at bar, those cases [granting summary judgment where the plaintiff had not provided evidence substantiating efforts to comply with the grievance process] were decided *after* discovery.") (emphasis in original).

## V. PLAINTIFF'S FAILURE TO UPDATE HIS ADDRESS

As the Court noted above, mail to the Plaintiff at the address the Court has on file has been returned to the Court as undeliverable. *See* Dkt. Nos. 23, 26. Per a review of the DOCCS Incarcerated Lookup, it appears Plaintiff was released to Parole on June 18, 2025. *See* www.nysdoccslookup.doccs.ny.gov for Brandon Brown, DIN: 22R0276, last visited 11/24/2025; *see also* Dkt. No. 21. To date, however, Plaintiff has not notified the Court of his change of address as he is required to do. *See* Dkt. No. 8 at 16-17; Dkt. Nos. 22, 25; N.D.N.Y. L.R. 10.1(c)(2) and 41.2(b). As such, Plaintiff is directed to notify the Court of his new address by

December 19, 2025.  Failure to do may result in dismissal of this action for failure to prosecute and failure to follow Court orders and directives.

## VI.    CONCLUSION

Accordingly, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be **DENIED**; and it is further

**ORDERED** that Plaintiff must notify the Court of his current address by December 19, 2025, or this matter may be *sua sponte* dismissed for failure to prosecute and failure to follow Court orders and directives; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Dated:  November 24, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

2020 WL 9264842

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sergeant SHORT, et al., Defendants.

9:19-cv-01352 (GTS/TWD)

|

Signed 11/16/2020

|

Filed 11/17/2020

**Attorneys and Law Firms**

DARELL JENKINS, Plaintiff, pro se, 18-A-0025, Southport Correctional Facility, PO Box 2000, Pine City, NY 14871.

OF COUNSEL: LAUREN ROSE EVERSLY, ESQ., Assistant Attorney General, HON. LETITIA JAMES, Attorney General for the State of New York, Attorney for Defendants, The Capitol, Albany, NY 12224.

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1** This matter was referred for a Report and Recommendation by the Honorable Glenn T. Suddaby, Chief U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Darell Jenkins, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil action under 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Mid-State Correctional Facility ("Mid-State"). (Dkt. No. 1.) The suit was originally filed in the United States District Court for the Western District of New York ("W.D.N.Y."), but was later transferred to this District. (Dkt. No. 6.) The District Court reviewed the complaint in accordance with 28 U.S.C. § 1915, and found only Plaintiff's First Amendment free exercise claims against Defendants Correctional Officer ("C.O.") Lindermayer, Sergeant ("Sgt.") Short, and C.O. O'Neil survived initial review and required a response. (Dkt. No. 10.)

Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing Plaintiff failed to exhaust his administrative remedies prior to commencing this action. (Dkt. No. 21.) Plaintiff has not responded to Defendants' motion and the time to do so has expired. (*See* Dkt. Nos. 25, 26, 27, 28.) For the reasons set forth below, the Court recommends that Defendants' motion be granted.

**II. BACKGROUND**

Plaintiff alleges that on September 1, 2019, at approximately 9:30AM, while Defendants were inside his cell, C.O. Lindermayer "kneeled down on the floor above [Plaintiff's] altar of Santeria, & threw [his] offerings & water away[.] (Dkt. No. 1 at 5.[1]) C.O. O'Neil then described Plaintiff's religion as "voodoo." *Id.* C.O. Lindermayer, Sgt. Short, and C.O. O'Neil told Plaintiff he was not permitted to offer "any food to [his] saints on [his] altar" and that he was not permitted to have frankincense oils. *Id.*

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 14 of 64

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

1    Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff filed a grievance but the grievance officer "Tapia" [2] "never answered [him]" and he "couldn't do anything because the grievance officer [did] not respond[.]" *Id.* Attached to Plaintiff's complaint is a letter dated September 27, 2019, from C. Tapia, IGP, acknowledging receipt of five pages of correspondence, assigned Grievance No. MS-24259-19. *Id.* at 8. The letter indicates Grievance No. MS-24259-19 was "forwarded to the Superintendent in accordance with Directive #4040" and that Plaintiff would be "notified of the results." *Id.* The letter stated to "Please refer to this grievance # with any future inquires." *Id.*

2    Christopher Tapia is the Inmate Grievance Program ("IGP") Supervisor at Mid-State. (Dkt. No. 23-1 at ¶ 3.)

**\*2**  Plaintiff's complaint is dated September 27, 2019. *Id.* at 7. It was notarized on October 3, 2019, and was stamped received by the Clerk for the W.D.N.Y. on October 11, 2019. *Id.* The matter was subsequently transferred to this District by Order of U.S. District Judge Elizabeth A. Wolford, issued on October 15, 2019. (Dkt. No. 5.) Upon receipt of the action, this Court issued a Decision and Order denying Plaintiff's *in forma pauperis* ("IFP") application as incomplete. (Dkt. No. 7.) Plaintiff filed a second IFP application and pursuant to the District Court's March 30, 2020, Decision and Order, Plaintiff's First Amendment free exercise claims against Defendants C.O. Lindermayer, Sgt. Short, and C.O. O'Neil survived initial review, and summonses were issued as to them. (Dkt. Nos. 8, 10, 11.)

Defendants have not answered the complaint and instead move for summary judgment based solely on exhaustion grounds. (Dkt. No. 21-1.) To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP for DOCCS, and Christopher Tapia, Supervisor of the IGP at Mid-State, describing DOCCS' administrative exhaustion process. (Dkt. Nos. 29-2, 29-3.) Defendants offer evidence that on or about September 4, 2019, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19, which alleged that on September 1, 2019, during a cell integrity check, C.O. Lindermayer threw out the sacrifices at his altar. (Dkt. No. 21-2 at ¶ 6.) The letters also alleged that, at some point between September 1, 2019 and September 3, 2019, C.O. O'Neil referred to Plaintiff's religion as "voodoo," and that Sgt. Short also interfered with his religious practice. *Id.* The first page of Grievance No. MS-24269-19, was stamped received by the "IGP Office" on September 4, 2019. (*See* Dkt. No. 21-3 at 8.) Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent. (Dkt. No. 21-2 at ¶ 7.) On or about April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* There is no record of Plaintiff appealing Grievance No. MS-24269-19 to the Central Office Review Committee ("CORC"). *Id.* at ¶¶ 9, 13. Thus, Defendants argue summary judgment is appropriate in this case because Plaintiff failed to fully exhaust his administrative remedies prior to the commencement of this action. (Dkt. No. 21-1.) As noted above, Plaintiff has failed to submit any opposition to Defendants' motion.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist[.]") (citations omitted).

**\*3** Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at \*3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

As noted, Plaintiff did not respond to Defendants' motion for summary judgment. Defendants' motion advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. No. 21 at 3.) The Clerk of the Court provided Plaintiff a similar notice. (Dkt. No. 24.) When Plaintiff failed to timely respond to the motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. (*See* Dkt. Nos. 25, 26, 27, 28.)

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y. L.R. 7.1(a)(3).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

**\*4** In New York State prisons, DOCCS has a well-established three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii).

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 16 of 64

Jenkins v. Short, Not Reported in Fed. Supp. (2020)
2020 WL 9264842

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Where the grievance involves allegations of employee misconduct, as alleged here, there is an expedited administrative process. *See id.* § 701.8. Complaints of harassment, once given a number and recorded by the IGP clerk, are forwarded directly to the Superintendent of the facility. *Id.* In such cases the Superintendent is required to order an investigation and render a decision within twenty-five calendar days. *Id.* § 701(a)-(f). If the Superintendent fails to respond within the required twenty-five day time limit, the inmate may appeal his grievance to CORC. *Id.* § 701.8(g). Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to the CORC. *See id.* § 701.8-(g)-(h); *see also Espinal v. Goord*, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id.* § 701.8(i). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,' " assuming there is a "next step" in the grievance process. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

**\*5** The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense, the defendants bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Whether the plaintiff has exhausted his administrative remedies is a question of law. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment *made in lieu of* an answer where inmate failed to exhaust administrative remedies)).

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. (Dkt. No. 21-2.) The record before the Court demonstrates Plaintiff completed only the first step of the grievance process before commencing this lawsuit. *Id.* As stated above, Plaintiff filed a series of letters that were consolidated into

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 17 of 64

Grievance No. MS-24269-19. *Id.* at ¶ 7. Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent for investigation in accordance with DOCCS policy on or about September 4, 2019. *Id.* at ¶ 8. On April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* at ¶ 9. However, Plaintiff did not appeal the Superintendent's denial of Grievance No. MS-24269-19 to CORC. *Id.* at ¶ 10.

For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g., Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC"); *see also Teaque v. Mullen*, No. 9:18-CV-01412 (GTS/CFH), 2019 WL 8589277, at *7 (N.D.N.Y. Dec. 17, 2019) ("Because plaintiff commenced this action before receiving a response from the Superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action."), *report and recommendation adopted by* 2020 WL 858355 (N.D.N.Y. Feb. 21, 2020).

**\*6** "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability" under *Ross*. *Ferrer v. Racette*, No. 14-cv-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citation omitted); *see Perez v. Colon*, No. 9:19-CV-722 (GTS/DJS), 2020 WL 4549206, at *4 (N.D.N.Y. June 16, 2020) ("finding no basis appeared on the record for concluding that DOCCS' grievance procedure was unavailable to the plaintiff given he failed to respond to the defendants' motion"), *report and recommendation adopted by* 2020 WL 4530602 (N.D.N.Y. Aug. 6, 2020).

Although he did not respond to Defendants' motion, Plaintiff's verified complaint suggests administrative remedies were unavailable to him at the time he commenced this action because the "grievance officer [did] not respond[.]" (Dkt. No. 1 at 7.) Defendants recognize the Superintendent's decision was issued beyond the 25 calendar days set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 21-1 at 7-8.) However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, C.J.) ("[A]ny failure by the IGRC or the Superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Here, when the Superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by September 29, 2019), Plaintiff had the ability to file an appeal with CORC. *See* 7 N.Y.C.R.R. § 701.8(g). "[I]nstead of doing so, [Plaintiff] rushed to Court, without attempting to appeal (the Superintendent's non-response) to [CORC] eviscerating the purpose of the administrative remedy process." *Teaque v. Mullen*, 2020 WL 858355, at *4 (citing *Woodford*, 548 U.S. at 89 (articulating two main purposes of exhaustion of administrative remedies)). Thus, because Plaintiff failed to appeal the Superintendent's non-response to the next level, he cannot be excused from the grievance process. *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations ..., if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' ") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)).

Based on the foregoing, the Court agrees with Defendants that Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. *See James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *5 (N.D.N.Y. Jan. 4, 2019) ("Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC."), *report and recommendation adopted by* 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019).

**Jenkins v. Short, Not Reported in Fed. Supp. (2020)**

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 18 of 64

2020 WL 9264842

Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrate scheme. *See Ross*, 136 S. Ct. at 1859-60. As pointed out by Defendants, Plaintiff filed and appealed the denial of an unrelated grievance (Grievance No. MS-24271-19) to CORC on or about November 7, 2019. (Dkt. No. 21-2 at ¶ 10.) *See also Gonzalez v. Coburn*, No. 6:16-cv-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (finding the plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that he could not avail himself of it). Lastly, the record does not demonstrate prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60. Thus, given the record and considering the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of fact that administrative remedies were available.

 **\*7** In light of the foregoing, the Court recommends granting Defendants' motion for summary judgment, as there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit. *See Snider v. Melindez*, 199 F. 3d 108, 111-12 (2d Cir. 1999). However, dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Here, more than six months have passed since Plaintiff should have appealed Grievance No. MS-24269-19 to CORC. (*See* Dkt. No. 21-2 at ¶¶ 8, 9, 13.) As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's complaint with prejudice. *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

## IV. CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[3]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 19 of 64

Jenkins v. Short, Not Reported in Fed. Supp. (2020)
2020 WL 9264842

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9264842

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 20 of 64

Jenkins v. Short, Not Reported in Fed. Supp. (2021)
2021 WL 958512

2021 WL 958512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sgt. SHORT; Officer Oneill; and Officer Lindermayer, Defendants.

9:19-CV-1352 (GTS/TWD)
|
Signed 03/15/2021

**Attorneys and Law Firms**

DARELL JENKINS, 18-A-0025, Plaintiff, Pro Se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

HON. LETITIA A. JAMES, Attorney General for the State of New York Counsel for Defendants, OF COUNSEL: LAUREN ROSE EVERSLEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

*1  Currently before the Court, in this *pro se* prisoner civil rights action filed by Darell Jenkins ("Plaintiff") against the above three employees of the New York State Department of Corrections and Community Supervision ("Defendants") pursuant to 42 U.S.C. § 1983, are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Defendants' motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to exhaust his administrative remedies, and (2) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 29, 30-31.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

**I. RELEVANT BACKGROUND**
Generally, in her Report-Recommendation, Magistrate Judge Dancks found that (1) because Plaintiff failed to exhaust his available administrative remedies before filing his Complaint, Defendants' motion for summary judgment should be granted, and (2) because Plaintiff cannot at this point cure his failure to exhaust, his Complaint should be dismissed with prejudice. (Dkt. No. 29, at 2-4, 6-13.)

Generally, in his Objection, Plaintiff asserts that his Complaint should not be dismissed with prejudice for failure to exhaust because "the Superintendent never responded back to me when I appealed the grievance." (Dkt. No. 30.) In addition, Plaintiff submits a decision from the Central Officer Review Committee, dated September 10, 2020, deciding his appeal. (Dkt. No. 31.)

**II. STANDARD OF REVIEW**
When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 21 of 64

**Jenkins v. Short, Not Reported in Fed. Supp. (2021)**

2021 WL 958512

material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

1    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*2**  When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

3    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully considering the matter, the Court can find no error in Magistrate Judge Dancks' thorough Report-Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only four points.

First, the Court is unpersuaded by Plaintiff's argument in his Objection his Complaint should not be dismissed with prejudice because "the Superintendent never responded back to me when I appealed the grievance." The Court will set aside the fact that, literally speaking, this assertion is undermined by the record evidence: the Superintendent did respond to him, on April 30, 2020. (*See* Dkt. No. 21, Attach. 3, at 12 [attaching decision by Superintendent dated Apr. 30, 2020].) More important, liberally construed, Plaintiff's argument is that the Superintendent never *timely* responded to him. The problem with this argument is that it is immaterial, because Plaintiff adduces no evidence, or even argument, that the time for the Superintendent to respond had expired by October 3, 2019 (or even that he filed an appeal to the Central Office Review Committee and failed to receive a timely response by that time). Regardless of whether the Superintendent failed to timely respond to him, Plaintiff filed his Complaint in this action without waiting the necessary time for a response from him (and/or without filing an appeal to the Central Office Review Committee and waiting the necessary time for a response from it).

 *3    Second, the Report-Recommendation appears to repeat a typographical error contained in Defendants' Statement of Material Facts: the assertion that Plaintiff filed a grievance numbered "MS-24269-19" that was distinct from the grievance that was numbered "MS-24259-19." (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 6-8, 12 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-24269-19"] *with* Dkt. No. 21, Attach. 2, at ¶ 13 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-24259-19"]; *see also* Dkt. No. 29, at 3-4, 13 [Report-Recommendation, referencing both numbers].) In fact, the record evidence relied on by Defendants for this assertion (that there existed a grievance numbered "MS-24269-19") does not support the assertion, but merely the assertion that there existed a grievance numbered "MS-24259-19." (Dkt. No. 21, Attach. 3, at ¶¶ 16, 17, 20 [Tapia Decl., referencing a grievance numbered "MS-24259-19"].)

However, this typographical error does not change the correctness of the Report-Recommendation's finding and conclusion that Plaintiff failed to exhaust his available administrative remedies before he filed his Complaint in this action (pursuant to the "Prison Mailbox Rule") on October 3, 2019. By that time, he had not received a decision of his grievance by the Superintendent, and could not realistically have appealed that decision (or the Superintendent's failure to issue a timely decision) to the Central Office Review Committee and received a response (or failed to receive a timely response) from it.

This is because attached to the Complaint (which is sworn and thus has the force and effect of an affidavit for purposes of a motion for summary judgment) is a notice dated September 27, 2019, advising Plaintiff that his five pages of previous correspondence (from September 1-3, 2019), had been received by the Inmate Grievance Program Supervisor, construed together as a grievance, assigned a grievance number, and forwarded to the Superintendent for decision. (Dkt. No. 1, at 8.) This failure of Plaintiff to exhaust his available administrative remedies before filing his Complaint is also asserted in Defendants' Statement of Undisputed Material Facts and not controverted by Plaintiff (despite the fact that he was twice specifically advised of the consequences of failing to properly oppose Defendants' motion and was granted three extensions of time in which to do so). (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 2, 6-8 [Defs.' Statement of Material Facts] *with* Dkt. No. 25 [Plf.'s Response].)

2021 WL 958512

Third, rather than oppose Defendants' motion, Plaintiff attempts to adduce new evidence as part of his objection to the Report-Recommendation. The Court declines to consider this late-blossoming evidence for each of two independent reasons. [5] First, Plaintiff has not persuaded the Court that he could not have presented the evidence to Magistrate Judge Dancks before the issuance of her Report-Recommendation, thus causing a waste of judicial resources (and a frustration of the purpose of the Federal Magistrates Act of 1968) if the Court were to consider it now. *See, supra,* note 2 and accompanying text of this Decision and Order. The Court notes that the document appears to have been created on or soon after September 10, 2020, and Plaintiff's final response deadline was not until November 2, 2020. Second, in any event, the document in no way shows that Plaintiff exhausted his available administrative remedies before filing his Complaint in this action; and, indeed, it contradicts any such assertion.

[5]     For the sake of brevity, the Court will set aside the fact that the bottom of the document appears missing, and the fact that the document is not introduced by an affidavit, rendering it somewhat questionable.

Fourth, and finally, although it is conceivable that this late-blossoming document could affect Magistrate Judge Dancks' finding that Plaintiff cannot now cure his failure to exhaust, the Court finds that it does not do so because, again, the Court is exercising its discretion to not consider the document: Plaintiff had a full and fair opportunity to present it to Magistrate Judge Dancks (before the issuance of her thoughtful Report-Recommendation) and he chose not to do so. [6]

[6]     The Court notes that any arguable prejudice to Plaintiff resulting from this exercise of the Court's discretion is lessened by the fact that, in its decision, the Central Office Review Committee granted Plaintiff the injunctive relief he requested in this action. (*Compare* Dkt. No. 1, at 5 [Complaint, requesting, as relief, "$50,000 and to be able to practice my religion and have frankenscent [sp] oils for my altar"] *with* Dkt. No. 31, at 1 [CORC Decision, accepting the grievance in part, and explaining that Plaintiff has been "permitted religious items"].)

**\*4  ACCORDINGLY**, it is

**ORDERED** that Magistrate Dancks' Report-Recommendation (Dkt. No. 29) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgement (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** **with prejudice**.

The Court finds that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 958512

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 24 of 64

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

2023 WL 2324988
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael T. HUDSON, Plaintiff,

v.

Correction Officer C. KIRKEY, et al., Defendants.

9:20-CV-00581 (LEK/DJS)
|
Signed March 2, 2023

**Attorneys and Law Firms**

Michael T. Hudson, Easton, PA, Pro Se.

Matthew Gallagher, State of New York - Attorney General, Albany Office, Albany, NY, for Defendant Correction Officer C. Kirkey.

<u>**MEMORANDUM-DECISION AND ORDER**</u>

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1**  Plaintiff Michael Hudson commenced this action pro se on May 28, 2020, alleging violations of Eighth Amendment rights at Mohawk Correctional Facility against Defendants Correction Officer ("C.O.") C. Kirkey, Sergeant John Doe, C.O. John Does 1–7, Nurse Jane Doe, and Doctor Jane Doe (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). On October 13, 2020, Defendants filed their first motion for summary judgment. Dkt. No. 17. Thereafter on January 26, 2021, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a Report-Recommendation recommending that this Court grant Defendants' first motion for summary judgment. Dkt. No. 25 ("January 2021 Report-Recommendation"). This Court rejected Judge Stewart's January 2021 Report-Recommendation on May 17, 2021, and denied Defendants' first motion for summary judgment. Dkt. No. 27 ("May 2021 Order").

On July 29, 2022, Defendants filed another motion for summary judgment. Dkt. No. 49 ("Motion"). Judge Stewart issued another Report-Recommendation—the underlying Report-Recommendation at issue here—recommending that Defendants' Motion be granted in part and denied in part. Dkt. No. 55 ("Report-Recommendation"). Defendants filed objections to the portion of Judge Stewart's Report-Recommendation recommending that Defendants' Motion be denied. Dkt. No. 57 ("Objections"). Plaintiff has not filed a response. See Docket. For the reasons that follow, the Court approves and adopts Judge Stewart's Report-Recommendation, with the modification that Judge Stewart hold an exhaustion hearing pursuant to <u>Messa v. Goord,</u> 652 F.3d 305 (2d Cir. 2011), to determine whether Plaintiff properly exhausted his administrative remedies concerning his excessive force claim against Kirkey.

## II. BACKGROUND

### A. Factual History

Plaintiff's factual allegations are detailed in the Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–3.

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 25 of 64

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

### B. Report-Recommendation

In the Report-Recommendation, Judge Stewart recommended that Defendants' Motion be denied in part and granted in part. Judge Stewart recommended denying Defendants' Motion predicated on the defense of exhaustion under the Prison Litigation Reform Act ("PLRA") with respect to Plaintiff's excessive force claim against Kirkey. R. & R. at 5–7. In particular, Judge Stewart found that the record could be read to show that Plaintiff submitted a grievance that was never filed. Id. at 6. Judge Stewart also stated that Defendants failed to provide affirmative evidence to establish that no grievance was filed. Id. However, Judge Stewart recommended granting summary judgment on the rest of Plaintiff's allegations because (1) Plaintiff failed to identify the Doe Defendants; (2) Plaintiff conceded that a certain physical force incident did not occur; and (3) Plaintiff's medical indifference claim remained unexhausted. Id. at 7–8.

## III. STANDARD OF REVIEW

Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review "does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002).

**\*2** However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need only review that aspect of a report-recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."); New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Federal Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019). Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. See Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, see Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252, 106 S.Ct. 2505. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Objections were timely filed with respect to the Report-Recommendation. See Docket. Defendants contend that Judge Stewart erred because he overlooked evidence showing that Plaintiff failed to exhaust his administrative remedies by not undertaking reasonable efforts to appeal his grievance to the superintendent level. Obj. at 2. Before addressing these arguments, the Court will discuss the relevant provisions of the PLRA and the grievance process in New York State prisons.

 *3  The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Killian, 680 F.3d at 238 (quoting Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." Ross v. Blake, 578 U.S. 632, 642, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643, 136 S.Ct. 1850 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644, 136 S.Ct. 1850. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644, 136 S.Ct. 1850.

In New York State:

DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

**\*4** Moreover, the Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. See Messa, 652 F.3d at 308–09 ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, Defendants object to Judge Stewart's conclusion that: "Defendant has not come forward with affirmative evidence on this Motion to establish that no grievance was filed. It is unclear why, if such evidence existed, it was not presented by Defendant." R. & R. at 6–7. Defendants argue that Judge Stewart erred because they contend that they have provided evidence showing that Plaintiff never filed grievances; they reference the evidence filed in their first motion for summary judgment to support this assertion. Obj. at 2–3. Defendants rely on Local Rule 7.1(b) which provides: "Documents that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should reference to the appropriate docket number." Obj. at 3 (citing L.R. 7.1(b)).

The Court agrees with Defendants that they have provided evidence for purposes of this motion. They need not re-file the same evidence pursuant to Local Rule 7.1(b). See Dkt. Nos 17-4; 17-8; 17-10. Nevertheless, the Court agrees with Judge Stewart's conclusion. As this Court has stated in a previous order, "this dispute essentially boils down to a clash of sworn statements." Hudson v. Kirkey, No. 20-CV-0581, 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (Kahn, J.). Similar to the facts of the May 2021 Order, Plaintiff testified that he submitted multiple grievances that were never filed, Dkt. No. 49-1 ("Plaintiff's Deposition") at 110–12, while "Kirkey submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson, 2021 WL 1966721, at *4. However, the Court cannot resolve the action in favor of Defendants because the Court is not convinced that Defendants have satisfied their burden of proof. As this Court noted: "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because this Court is prohibited from making credibility determinations." Id. As another court in this District explained:

> [T]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless filed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him, or her, the remedy was unavailable. As a result, practically speaking, while the burden on this affirmative defense remains all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

Coleman v. Nolan, No. 15-CV-40, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (internal citations and quotations omitted).

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 28 of 64

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

**\*5**  Moreover, the framework described above "does not require a greater evidentiary showing from Plaintiff than would otherwise be required during summary judgment." Hudson, 2021 WL 1966721, at \*4 (citations omitted). "A presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment." Id. Thus, as this Court explained, "once Kirkey introduced evidence that there was a functional grievance system [via Dkt. No. 17], Plaintiff could not have survived summary judgment by simply pointing to Kirkey's failure to introduce evidence that this process was specifically available to Plaintiff. Rather in order to make the presumption of availability 'vanish,' Plaintiff had to produce competent evidence supporting unavailability." Id. (citing McLean v. LaClair, No. 19-CV-1227, 2021 WL 671650, at \*8 (N.D.N.Y. Feb. 22, 2021)).

Like the Court found in the May 2021 Order, Plaintiff *has* submitted evidence supporting unavailability of administrative remedies. Plaintiff testified that he attempted to submit grievances twice, Pl.'s Dep. at 110–12, and then testified that after he inquired with prison officials about his grievances he was told, "you waited too many days to file again." Id. at 112. As a result, drawing all inferences in favor of Plaintiff, the record shows that he attempted to file his grievance twice and when he followed up, he was told he could not re-file because he "waited too many days to file again...." Id. And because "a sworn statement [or deposition] based upon personal knowledge is sufficient when opposed only by a movant's conflicting sworn statement ... Plaintiff's evidence is sufficient" to defeat summary judgment at this stage in the litigation. Hudson, 2021 WL 1966721, at \*4 (citations omitted).

Likewise, "the ... statements from each side are not necessarily inconsistent. Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it." Id. (citations omitted). See also Zulu v. Barnhart, No. 16-CV-1408, 2019 WL 2997226, at \*13, (N.D.N.Y. Apr. 22, 2019) report and recommendation adopted, No. 16-CV-1408, 2019 WL 2150628, (N.D.N.Y. May 17, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that ... the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertions that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

Accordingly, Kirkey has failed to carry his burden of proof that no disputes of material fact exist regarding whether the grievance process was available to Plaintiff due to potential "machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions." McLean, 2021 WL 671650, at \*9. Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented." Hudson, 2021 WL 1966721, at 4. [1]  See also McLean v. LaClair, No. 10-CV-1227, 2021 WL 671650, at \*9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence). As a result, holding an exhaustion hearing pursuant to Messa v. Goord before Judge Stewart is the most appropriate action.

[1]    Kirkey also argues that Plaintiff never filed an appeal, and thus failed to exhaust his remedies. See Mot. at 7. However, Kirkey already made this argument to Judge Stewart. Mot. at 9. Thus, the Court will not relitigate this argument de novo. See Forde, 341 F. Supp. 3d at 346 ("When a party makes only conclusory or general objections, or *simply reiterates the original arguments*, the Court will review the [report and recommendation] strictly for clear error.") (emphasis added). Even assuming *arguendo* that the Court reviewed this portion de novo, the Court has already found that Kirkey failed to demonstrate an absence of material fact regarding whether administrative remedies were available. Gill v. Frawley, No. 02-CV-1380, 2006 WL 1742738, 2006 U.S. Dist. LEXIS 101694 at \*44 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have suggested that an inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases). As a result, an exhaustion hearing is required. See Woodward v. Lytle, No. 16-CV-1174, 2019 WL 2527342, at \* 1 (N.D.N.Y. May 24, 2019), report and recommendation adopted, 2019 WL 2524756 (N.D.N.Y June 19, 2019) (opting to issue a decision on exhaustion subsequent to a hearing).

2023 WL 2324988

**\*6**  Neither party filed objections to the remaining portions of the Report-Recommendation when they were due pursuant to Fed. R. Civ. P. 6(d) and 6(a)(1)(C). See generally Docket. Consequently, the Court reviews the rest of the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation with the modification regarding exhaustion.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 55) is **APPROVED and ADOPTED** with the modification that Magistrate Judge Stewart resolve the exhaustion issues concerning Plaintiff's excessive force claim against Kirkey through a hearing; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED** with respect to all claims against the unidentified John Doe and Jane Doe defendants; and it is further

**ORDERED**, that the Clerk terminate the John Doe and Jane Doe Defendants from this action; and it is further

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 49) is **DENIED** with respect to Plaintiff's Eighth Amendment excessive force claim against Kirkey; and it is further

**ORDERED**, that this matter is **REFERRED BACK** to Magistrate Judge Stewart to facilitate resolution of the genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies, including holding an exhaustion hearing concerning his excessive force claim against Kirkey; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2324988

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 30 of 64

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

2021 WL 981849
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Robert JACKSON, Plaintiff,

v.

C.O. Angela JACKSON, et al., Defendants.

16-CV-08516 (PMH)
|
Signed 03/16/2021

**Attorneys and Law Firms**

Robert Jackson, Beacon, NY, pro se.

Amanda Yoon, NYS Office of the Attorney General, New York, NY, Rebecca Lynn Johannesen, Colorado Department of Law, Denver, CO, for Defendants.

**MEMORANDUM OPINION AND ORDER**

PHILIP M. HALPERN, United States District Judge:

 **\*1**  Plaintiff Robert Jackson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Correction Officers Angela Jackson, M. Walker, and J. James (collectively, "Defendants"). (Doc. 2, "Compl."). Specifically, Plaintiff alleges that in June 2015—while incarcerated at Sing Sing Correctional Facility in Ossining, New York ("Sing Sing")—Defendants violated his constitutional rights by: (1) using excessive force against him, in violation of the Eighth Amendment; and (2) filing a false internal complaint against him, in violation of the Fourteenth Amendment. (*See generally id.*).

On July 10, 2017, Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's due process claim along with all claims for monetary damages against them in their official capacities. (Doc. 16). By Opinion & Order dated April 20, 2018, Judge Román granted Defendants' motion and granted Plaintiff leave "to file an Amended Complaint ... on or before June 19, 2018." (Doc. 19 at 8). Despite securing an extension of the time within which to file his amended pleading, Plaintiff failed to do so. Consequently, the only claim remaining in this action is one for excessive force against Defendants in their individual capacities.

Defendants filed an Answer on August 30, 2018 (Doc. 22) and, with leave of Court, filed an Amended Answer on October 2, 2019. (Doc. 29, "Am. Ans."). Shortly thereafter, in an Order issued on October 22, 2019, Judge Román "waive[d] the Initial Pre-trial Conference and direct[ed] the parties to confer and complete a Case Management Plan and Scheduling Order...." (Doc. 30). Although Plaintiff filed a proposed discovery plan on November 19, 2019 (Doc. 32), Defendants filed a letter the following day to request both an extension of time within which to submit a proposed discovery schedule and a pre-motion conference to discuss an anticipated motion for summary judgment on the sole issue of administrative exhaustion (Doc. 31). There was no further activity on the docket in this case until it was reassigned to this Court in April 2020. [1]

[1]    There are two docket entries reflecting reassignment of this matter from Judge Román to this Court on different dates. (*See* Apr. 3, 2020 Entry; Apr. 13, 2020 Entry).

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 31 of 64

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

On April 13, 2020, the Court granted Defendants' request, set a briefing schedule for the extant summary judgment motion, and directed Defendants to mail a copy of that Order to Plaintiff; Defendants filed an affidavit of service the same day. (Doc. 33; Doc. 34). Approximately one month later, on May 6, 2020, Defendants filed a letter requesting an extension of the briefing schedule. (Doc. 36). In that letter, Defendants noted also that upon "conferr[ing] with the New York State Division of Parole," they had learned that Plaintiff had been released from custody and was believed to be residing at an address in New York, New York. (*Id.*). In an endorsement dated May 7, 2020, the Court granted Defendants' request to extend the briefing schedule and directed Defendants to serve a copy of that Order on Plaintiff; Defendants filed an affidavit of service the next day indicating that the Order had been mailed to Plaintiff's address in New York City. (Doc. 37; Doc. 38).

**\*2** Defendants filed their motion for summary judgment on June 15, 2020. (Doc. 39; Doc. 40, "Def. Br."). On July 23, 2020, Defendants filed a letter noting that Plaintiff's time to oppose the pending motion had passed and requesting that the Court consider the motion unopposed. (Doc. 44). The Court endorsed the letter on July 24, 2020, extended Plaintiff's time to file an opposition to August 24, 2020 *sua sponte*, and advised that "[i]f plaintiff fails to file his opposition by August 24, 2020, the motion will be deemed fully submitted and unopposed." (Doc. 45). The Court also instructed Defendants to serve a copy of that Order on Plaintiffs (*id.*); Defendants filed an affidavit of service that reflected mailings to both Fishkill and the address in New York City shortly thereafter. (Doc. 46). The Court has received no communications from Plaintiff since November 2019 and, as such, considers the motion fully submitted and unopposed.

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

**BACKGROUND**

The facts, as recited below, are taken from the Complaint, Defendants' Local Civil Rule 56.1 Statement (Doc. 42, "56.1 Stmt."), and the admissible evidence submitted by the parties. [2]

2      In support of the instant motion, defense counsel filed a Declaration annexing two affidavits (with exhibits) for the Court's consideration. (Doc. 41). The first affidavit is from Quandera T. Quick ("Quick"), the Inmate Grievance Program ("IGP") Supervisor at Sing Sing. (Doc. 41-1, "Quick Aff." ¶ 1). This affidavit attaches as exhibits copies of: (1) New York State Department of Corrections and Community Supervision Directive ("DOCCS") No. 4040 (*id.* 5-21, "Quick Ex. A"); (2) Plaintiff's June 4, 2015 Grievance ("Grievance") (*id.* at 22-23, "Quick Ex. B"); and (3) the written decision issued by Michael Capra, Sing Sing's Superintendent, on August 14, 2015 (*id.* at 24-25, "Quick Ex. C"). The second affidavit is from Rachael Seguin ("Seguin"), the Assistant Director of the IGP for DOCCS and custodian of records for the Central Office Review Committee ("CORC"). (Doc. 41-2, "Seguin Aff."). This affidavit attaches as exhibits copies of: (1) DOCCS Directive No. 4040 (*id.* at 4-20, "Seguin Ex. A"); and (2) the results of a search for appeals filed with the CORC (*id.* at 21-23, "Seguin Ex. B").

  I. The Underlying Incident

Plaintiff's factual allegations, *in toto*, are as follows:

> After an arguement [sic] with C.O. Jackson in the messhall[,] I was taken to the bridge area where the defendants beat me into a seizure, then fabricated a misbehavior report to justify their actions.

(Compl. at 4). Plaintiff maintains that this incident occurred on June 4, 2015. (*Id.*).

Case 9:24-cv-01474-DNH-TWD    Document 28    Filed 11/24/25    Page 32 of 64

Jackson v. Jackson, Not Reported in Fed. Supp. (2021)

2021 WL 981849

II. <u>Plaintiff's Grievance</u>

Plaintiff filed the Grievance on June 17, 2015. (Quick Aff. ¶ 9; Quick Ex. B). Therein, Plaintiff complained that as he "was walking out [of] the messhall" on June 4, 2015, "C.O. Ms. Jackson and ... other[s] ... beat me down...." (Quick Ex. B). On August 14, 2015, following an investigation into Plaintiff's complaint, the Sing Sing Superintendent issued a written decision denying the Grievance. (Quick Aff. ¶ 11; Quick Ex. C). In full, the Superintendent's written decision reads as follows:

> Grievant claims staff harassment.
>
> The grievant was interviewed by a supervisor. The grievant had nothing further to add to his original complaint and provided no witnesses.
>
> Staff involved were interviewed and provided a written report denying the allegations of wrongdoing or harassing the grievant.
>
> Based on the investigation conducted, insufficient evidence could be found to substantiate the grievant [sic] allegations. Grievance is denied.

(Quick Ex. C). The Superintendent's decision advised that Plaintiff had seven days to appeal the determination to CORC, should he choose to do so (*id.*); however, there is no record that Plaintiff ever appealed to CORC (Quick Aff. ¶ 12; Seguin Aff. ¶¶ 6-7; Seguin Ex. B).

## STANDARD OF REVIEW

**\*3** Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). " 'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at \*1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial...." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts...." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at \*2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners*

Case 9:24-cv-01474-DNH-TWD   Document 28   Filed 11/24/25   Page 33 of 64
Jackson v. Jackson, Not Reported in Fed. Supp. (2021)
2021 WL 981849

*LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when ... law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant ... is proper"). This standard applies equally to claims for relief and affirmative defenses. *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...."). [3]

3    "[T]he failure to exhaust administrative remedies in compliance with the [Prison Litigation Reform Act] is an affirmative defense" and it "may be waived" by a defendant who fails to raise it. *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 693 n.3 (S.D.N.Y. 2016) (internal quotation marks omitted). Here, Defendants' Fourth Affirmative Defense was failure to comply with 42 U.S.C. § 1997e. (Am. Ans. ¶ 14).

**\*4** The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-7186, 2018 WL 1605982, at \*9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff," *Adams v. George*, No. 18-CV-2630, 2020 WL 5504472, at \*5 (S.D.N.Y. Sept. 8, 2020), but the mere fact that a litigant is *pro se* "does not relieve the plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment," *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Where, as here, a *pro se* litigant fails to oppose a motion for summary judgment, the motion may be granted as unopposed only "if: (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *McNair v. Ponte*, No. 17-CV-2976, 2020 WL 3402815, at \*3 (S.D.N.Y. June 18, 2020) (quoting *Warren v. Chem. Bank*, No. 96-CV-6075, 1999 WL 1256249, at \*2 (S.D.N.Y. Dec. 22, 1999)). [4]

4    Given the Court's conclusion that there is no genuine issue of material fact as to exhaustion, it does not need to reach Defendants' request for an evidentiary hearing should the Court find otherwise.

## ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is " 'mandatory': [a]n inmate 'shall' no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.' " *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at \*4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.' " *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at \*6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Accordingly, the Court looks to the process available to Plaintiff. *See Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at \*6 (S.D.N.Y. Sept. 23, 2020).

There are three levels of review for inmate grievances at Sing Sing. *See generally Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining the three-step process). First, a grievance is reviewed by the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. (Quick Ex. A §§ 701.4, 701.5(a)-(b); Senguin Ex. A §§ 701.4, 701.5(a)-(b)). Second, should the inmate be dissatisfied with the IGRC's determination, he may appeal that

decision to the Superintendent. (Quick Ex. A § 701.5(c); Senguin Ex. A § 701.5(c)). Finally, if the Superintendent's conclusions are unfavorable, the inmate may appeal that decision to CORC. (Quick Ex. A § 701.5(d); Senguin Ex. A § 701.5(d)). However, when a grievance concerns staff harassment, DOCCS procedures provide for an expedited review that allows for the complaint to bypass IGRC review and proceed before the Superintendent in the first instance. (*See* Quick Ex. A § 701.8; Senguin Ex. A § 701.8). Both the Superintendent and CORC are required to "date stamp all" grievances or appeals forwarded to them for review (Quick Ex. A §§ 701.5(c)(3), 701.5(d)(3)(i); Senguin Ex. A §§ 701.5(c)(3), 701.5(d)(3)(i)) and require entities to maintain files "for the current calendar year plus the previous four calendar years" (Quick Ex. A § 701.6(k)(3); Senguin Ex. A § 701.6(k)(3)).

 **\*5**  Quick represents, as custodian of records maintained by the IGP at Sing Sing, that grievances "are collected from the IGRC mailbox and processed" daily, in accordance with DOCCS procedures. (Quick Aff. ¶ 5). Quick's records reveal that Plaintiff filed the Grievance on June 17, 2015, that the Grievance was forwarded directly to the Superintendent as one concerning staff harassment, and that the Superintendent performed an investigation and issued a written decision denying the Grievance on August 14, 2015. (*Id.* ¶¶ 9-11; Quick Ex. B). However, both Quick and Seguin represent affirmatively that they have no record of Plaintiff taking the final step of appealing the Superintendent's decision to CORC. (Quick Aff. ¶12; Seguin Aff. ¶¶ 6-7).

Even while granting Plaintiff—who filed nothing in opposition to this motion, and, in fact, has filed nothing in this case at all since November 2019 (*see* Doc. 32)—every conceivable benefit of the doubt to which a *pro se* litigant is entitled, there is no genuine issue of material fact on the instant motion. Consequently, summary judgment is proper here because: (1) Defendants established that Plaintiff failed to exhaust his administrative remedies and, as such, also their entitlement to summary judgment on the affirmative defense of Plaintiff's failure to exhaust his administrative remedies as required by the PLRA; and (2) Plaintiff was warned that failure to file an opposition would result in the Court concluding that the motion was unopposed. [5]

[5]    Even if the Court did not grant Defendants' motion for summary judgment, it would dismiss the action with prejudice under Federal Rule of Civil Procedure 41(b) as a result of Plaintiff's failure to prosecute this action. Indeed, Plaintiff has not filed anything in this case since he filed a proposed discovery schedule more than a year ago.

<u>**CONCLUSION**</u>

Based upon the foregoing, the motion for summary judgment is GRANTED.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 981849

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1033687
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bernard J. SORRENTINO, Plaintiff,

v.

ANNUCCI, et al., Defendants.

9:23-cv-00582 (LEK/TWD)

|

Signed February 13, 2025

**Attorneys and Law Firms**

BERNARD J. SORRENTINO, 03-B-0299, Plaintiff, pro se, Wallkill Correctional Facility, Route 208 Box G, Wallkill, NY 12589.

ALEXANDRA L. GALUS, ESQ., Assistant Attorney General, ATTORNEY GENERAL FOR THE STATE OF NEW YORK, Attorney for Defendants, The Capitol, Albany, NY 12224.

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1**  This matter has been referred for a report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Bernard J. Sorrentino ("Plaintiff"), an individual being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 asserting claims arising from his incarceration at Eastern Correctional Facility ("Eastern C.F."). *See* Dkt. No. 12. [1] Following review of the amended complaint for sufficiency in accordance with 28 U.S.C. § 1915A, the following claims survived sua sponte review and required a response: (1) Plaintiff's First Amendment retaliation claim against Correction Officer Tierney ("Tierney"); and (2) Plaintiff's Fourteenth Amendment due process claims against Tierney and Hearing Officer Morrow ("Morrow") (together "Defendants"). *See* Dkt. No. 13.

[1]    Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

Currently before the Court is Defendants' motion seeking dismissal of Plaintiff's First Amendment retaliation claim against Tierney. [2] *See* Dkt. No. 25. This motion was filed in lieu of an answer, seeking summary judgement for failure to exhaust administrative remedies, [3] or, in the alternative, dismissal for failure to state a claim upon which relief may be granted. *See* Dkt. No. 25-5. Plaintiff has filed a response. *See* Dkt. Nos. 33, 34. For the reasons set forth below, the undersigned recommends Defendants' motion be denied.

[2]    Defendants do not seek dismissal of Plaintiff's Fourteenth Amendment procedural due process claims. *See* Dkt. No. 25-5 at 3 n.1. Defendants filed an answer responding to Plaintiff's Fourteenth Amendment due process claims on April 24, 2024. *See* Dkt. No. 27. On May 7, 2024, the undersigned granted Defendants' request for a stay of the discovery deadline. *See* Dkt. No. 30. After the District Court renders a decision on the instant motion, a Mandatory Pretrial Discovery and

Scheduling Order will be issued outlining the terms of discovery and requiring the parties to exchange certain mandatory disclosures. *See id.*

3    Defendants' submission includes a Notice of Motion, Dkt. No. 25, Attorney Declaration, Dkt. No. 25-1, Anthony Black Declaration with Exhibits, Dkt. No. 25-2, Rachel Seguin Declaration with Exhibits, Dkt. No. 25-3, Local Rule 56.1(a) Statement of Material Facts, Dkt. No. 25-4, Memorandum of Law, Dkt. No. 25-5, and Declaration of Service, Dkt. No. 25-6.

## II. BACKGROUND

The following facts are set forth as alleged by Plaintiff in the amended complaint. *See* Dkt. No. 12. On February 18, 2020, Tierney issued Plaintiff a misbehavior report, which falsely accused Plaintiff of stating he would like to "marry" Corrections Officer Vauricka and "could kill her." *Id.* at 3.[4] Based on this statement, Tierney charged Plaintiff with "stalking, violent conduct and making a threat." *Id.*

4    Plaintiff's states, "I did not make this statement. The offending statement was meant to superficially mimic my crime, which involved causing my wife's death while blacked-out because of marital problems ...." Dkt. No. 12 at 3.

**\*2** Prior to Plaintiff's receipt of the misbehavior report, he filed "environmental Complaints related to unchecked smoking" in his housing area and the burning of "Muslim oils ... to cover up the odor of smoke from cigarettes and drugs." *Id.* at 4. Plaintiff also submitted a complaint to DOCCS officials based on "items being taken out of [his] cell without authorization," which resulted in a payment from "Albany" for the loss of property." *Id.* at 5. The payment "implicated" officers from Plaintiff's housing unit, including Tierney, in the wrongdoing. *Id.* at 4-5.

DOCCS afforded Plaintiff a disciplinary hearing based on the misbehavior report, which was conducted by Morrow.[5] *Id.* at 3-4. Plaintiff's disciplinary hearing concluded on February 28, 2020, with Morrow finding Plaintiff guilty of all charges in the misbehavior report and sentencing him to seventy days of confinement in the special housing unit ("SHU"). *Id.* at 3. Plaintiff appealed this disciplinary sentence to the Superintendent of Eastern C.F., who "dismissed the stalking and violent conduct charges and reduced the SHU time to 50 days" on March 20, 2020. *Id.*

5    The Court previously provided a detailed summary of Plaintiff's Fourteenth Amendment due process claims against Tierney and Morrow on initial review. *See* Dkt. No. 13 at 1-4. Because Defendants only seek dismissal of Plaintiff's First Amendment retaliation claim against Tierney, the Court does not recount Plaintiff's Fourteenth Amendment due process claims here.

## III. STANDARD OF REVIEW

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

**\*3** Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

" 'Although a motion for summary judgment may be filed at any time until 30 days after the close of all discovery, Fed. R. Civ. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred.' ... '[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.' " *Johnson v. Owens*, No. 9:20-CV-0982 (LEK/CFH), 2022 WL 958127, at \*3 (N.D.N.Y. Mar. 30, 2022) (alterations in original) (quoting *Houston v. Sheahan*, No. 13-CV-6594, 2016 WL 554849, at \*1 (W.D.N.Y. Feb. 10, 2016), and then quoting *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (other citations omitted)).

**B. Motion to Dismiss**

On a Federal Rule of Civil Procedure 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> Determining whether a complaint states a plausible claim for relief ... requires the reviewing court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 679 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**\*4** In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted). Moreover, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at \*6 (N.D.N.Y. Oct. 22, 2008); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

## IV. DISCUSSION

Defendants seek dismissal of Plaintiff's First Amendment retaliation claim against Tierney on two grounds: (1) failure to exhaust administrative remedies pursuant to Federal Rule of Civil Procedure 56(a); and (2) failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 25-2.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust his administrative remedies, a prisoner must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701 et seq. First, an inmate must first file a grievance with the facility's IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a). The Incarcerated Grievance Resolution Committee ("IGRC") reviews and investigates the grievance and then issues a written determination. *Id.* § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). Third, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Toussaint v. Rumsey*, No. 9:23-CV-974 (LEK/DJS), 2024 WL 3649918, at \*3 (N.D.N.Y. June 5, 2024) (citation omitted), *report and recommendation adopted sub nom. Toussaint v. Doe #1*, 2024 WL 3371074 (N.D.N.Y. July 10, 2024).

An expedited procedure exists for grievances regarding alleged harassment, this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Upon receipt, the IGP directly forwards the grievance to the superintendent upon filing by the close of business day, who has twenty-five calendar days to render a response. *Id.* If an incarcerated individual disagrees with the superintendent's response, they must still appeal the decision to CORC to exhaust their administrative remedies. *Id.* § 701.8(h). If an incarcerated individual fails to receive a response to an expedited grievance from the superintendent within twenty-five calendar days, the failure to respond may be construed as a denial, and the incarcerated individual can appeal to CORC to exhaust their administrative remedies. *Id.* § 701.8(g). Exhaustion of the grievance procedure only occurs *after* CORC has rendered its decision. *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

**\*5** Nevertheless, under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The Supreme Court has identified three examples of unavailable administrative procedures: (1) those that

"operate[ ] as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) those that are "so opaque that [they] become[ ], practically speaking, incapable of use," where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" and (3) those where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. The defendant discharges his or her initial burden by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order). The burden then shifts to the plaintiff, who must show that "other factors ... rendered a nominally available procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted).

### 1. Defendants' Statement of Material Facts

Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts. *See* L.R. 56.1(a). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." *Id.* The opposing party is required to file a response to the Statement of Material Facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." L.R. 56.1(b). "<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>." *Id.* (emphasis in original).

In accordance with Rule 56.1(a), Defendants filed and served a Statement of Material Facts. *See* Dkt. No. 25-4. Although Plaintiff filed a response to Defendants' motion, he failed to respond to Defendants' Statement of Facts. *See* Dkt. Nos. 33, 34. Where, as in this case, a party has failed to respond to the movant's Statement of Material Facts in the manner required under Local Rule 56.1(b), the facts in the movant's statement to which the plaintiff has not properly responded will be accepted as true (1) to the extent that they are supported by evidence in the record, and (2) provided that the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[6] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[6]      Plaintiff was served with the requisite notice. *See* Dkt. Nos. 25, 26.

Therefore, the Court will deem properly supported facts stated in Defendants' Statement of Material Facts, Dkt. No. 25-4, as true for the purposes of this motion. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (accepting as true the material facts contained in unopposed statement of material facts); *see Ruotolo v. Figueroa*, No. 1:22-CV-169 (LEK/DJS), 2025 WL 276010, at *1 (N.D.N.Y. Jan. 23, 2025) (same).

### 2. Analysis

"Whether the plaintiff has exhausted his administrative remedies is a question of law .... Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer." *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *5 (N.D.N.Y. Nov. 17, 2020) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted*, 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

**\*6** In support of their motion for summary judgment in lieu of an answer, Defendants submit sworn declarations from Eastern C.F. IGP Supervisor Anthony Black and Director of the IGP for DOCCS Rachel Seguin, which describe DOCCS' administrative exhaustion process. *See* Dkt. Nos. 25-2, 25-3. As detailed therein, at all relevant times, incarcerated individuals at Eastern C.F., were provided with full access to the IGP. Dkt. Nos. 25-2 at ¶ 18, 25-3 at ¶ 11. Plaintiff's claim that a false misbehavior report was issued against him in retaliation for prior complaints is the proper subject for a grievance. Dkt. Nos. 25-2 at ¶ 16, 25-3 at

¶ 10. DOCCS records maintained at Eastern C.F. and CORC show Plaintiff did not file a grievance related to his retaliation claim, nor was a grievance related to his retaliation claim appealed to CORC. Dkt. No. 23-2 at ¶ 19; 23-3 at ¶ 13. With these submissions, Defendants have satisfied their initial burden of demonstrating that a grievance procedure existed, and Plaintiff failed to exhaust administrative remedies related to the allegedly false misbehavior report issued on February 18, 2020, by Tierney. *See Hubbs*, 788 F.3d at 59; *see also Bennett v. Onua*, No. 09 Civ. 7227, 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that the defendants "adequately supported the affirmative defense of failure to exhaust" where "a search of the grievance log records ... did not reveal any record of a grievance" filed by the plaintiff).

Because Defendants have met their initial burden, the burden shifts to Plaintiff to show that the administrative remedies were unavailable to him. *See Hubbs*, 788 F.3d at 59. In his sworn affidavit submitted in opposition to Defendants' motion, Plaintiff avers, he "complained" to Black "about false misbehavior report written by officer Tierney." Dkt. No. 33 at 14. He further claims, "After I was taken to SHU and before my hearing I wrote Mr. Black, I told him about the false misbehavior report written on me. He attached a note stating it is in the hands of the administration. All my correspondences are missing that I had with Mr. Black." *Id.* at 5.

Liberally construed and drawing all reasonable inferences in Plaintiff's favor, Plaintiff appears to raise an issue regarding the availability of his administrative remedies. But "at this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve this issue just based on the papers." *Murray v. Noeth*, No. 6:19-CV-6342, 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022); *see also Johnson v. Owens*, No. 9:20-CV-0982 (LEK/CFH), 2022 WL 958127, at *4 (N.D.N.Y. Mar. 30, 2022) ("Because Plaintiff has not yet had an opportunity to conduct discovery to support his exhaustion theory, the Court finds Defendants' request for summary judgment premature.") (collecting cases). [7]

[7]    *See, e.g.*, *Young-Flynn v. Wright*, No. 05-CV-1488, 2007 WL 241332, at *13 (S.D.N.Y. Jan. 26, 2007) (finding summary judgement premature even where the "Court ha[d] some doubt that Plaintiff's only described efforts toward exhaustion could ultimately be found sufficient to overcome the exhaustion requirement" because discovery had not yet been conducted"); *Blackhawk v. Hughes*, No. 9:20-CV-0241 (LEK/TWD), 2021 WL 862257, at *4 (N.D.N.Y. Jan. 19, 2021) (denying motion for summary judgement and noting that while exhaustion of administrative remedies is a question of law, and hence appropriate for consideration on a motion for summary judgement in lieu of an answer, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery") (quoting *Hellstrom*, 201 F.3d at 97), *report and recommendation adopted*, 2021 WL 752838 (N.D.N.Y. Feb. 26, 2021).

Accordingly, it is recommended that Defendants' motion for summary judgment seeking dismissal of Plaintiff's First Amendment retaliation claim against Tierney for failure to exhaust administrative remedies be denied without prejudice. [8]

[8]    While the District Court could order an exhaustion hearing, *see Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here. Indeed, Defendants' counsel appears to recognize as much and "requests an opportunity to depose Plaintiff on the limited issue of exhaustion followed by an evidentiary hearing pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011)." Dkt. No. 25-1 at ¶ 4. However, as noted above, a Mandatory Pretrial Discovery and Scheduling Order will be issued in due course, and Defendants will have the opportunity to renew their exhaustion argument by dispositive motion or an exhaustion hearing at a later date.

**B. First Amendment Retaliation**

 **\*7**  Pursuant to Federal Rule of Procedural 12(b)(6), Defendants move to dismiss Plaintiff's First Amendment retaliation claim against Tierney. *See* Dkt. No. 25-5 at 12-14. Plaintiff opposes the motion. *See* Dkt. No. 33, 34.

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be

characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the Plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Id.* (quoting *Dawes*, 239 F.3d at 492).

Here, Defendants contend "Plaintiff has not established a causal connection between his protected conduct and the alleged adverse action. [9] *Id.* at 12. "To plead a causal connection between protected speech and adverse actions, a plaintiff must show that 'the protected conduct was a substantial or motivating factor in the prison officials' decision to take action against the plaintiff.' " *Miller v. Annucci*, No. 9:19-CV-30 (LEK/ATB), 2019 WL 11276705, at *5 (N.D.N.Y. Dec. 16, 2019) (quoting *Ciaprazi v. Goord*, No. 9:02-CV-915 (GLS), 2005 WL 3531464, at *6 (N.D.N.Y. Dec. 22, 2005)); *accord Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012). When evaluating whether a causal connection exists, a court may consider "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." *Miller*, 2019 WL 11276705, at *5 (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 207 (N.D.N.Y. 2009) (other citation omitted)).

[9]    For purposes of this motion only, Defendants "will assume Plaintiff has established the first two prongs of his First Amendment retaliation claim against Defendant [Tierney], and therefore, only the third prong will be addressed in this motion." Dkt. No. 25-5 at 12 n.2.

As detailed above, Plaintiff alleges Tierney issued him a false misbehavior report in retaliation for previous complaints he had made about unchecked smoking and "items being taken out of [his] cell without authorization," which resulted in a payment from "Albany" for the loss of property. Dkt. No. 12 at 4-5. Plaintiff claims the payment "implicated" officers from Plaintiff's housing unit, including Tierney, in the wrongdoing because Tierney "ran West Wing at Eastern Correctional Facility most nights." *Id.* at 4.

Defendants argue "[t]hese conclusory allegations ... are not enough to establish a causal connection between" the protected conduct and the adverse action. Dkt. No. 25-5 at 14. Specifically, Defendants contend there are no allegations in the amended complaint that "Tierney was the Correction Officer that the Plaintiff had complained to, or that Defendant Tierney was named in these complaints." *Id.* at 13. Defendants further note "it is difficult to establish one defendant's retaliation for complaints against another defendant." Dkt. No. 25-5 at 15 (collecting cases). While Defendants cite a number of cases to support their position, all are distinguishable or inapposite.

 **8**  Drawing all inferences in Plaintiff's favor, the undersigned finds Plaintiff has satisfied the causation prong. First, Plaintiff alleges the February 18, 2020, misbehavior report followed close in time to Plaintiff complaints based on "items being taken out of [his] cell without authorization," which resulted in a payment from "Albany." [10] Dkt. No. 12 at 4; *see* Dkt. Nos. 33 at 19 (indicating claim was approved on February 11, 2020), *see also* Dkt. No. 33-1 at 14 ("just a few days before the [misbehavior] report was written [Plaintiff] received a settlement for a pair of new sneakers"). *See Fabrizio v. Rielly*, No. 9:20-CV-0011 (GTS/ ML), 2022 WL 18402299, at *10 (N.D.N.Y. Dec. 15, 2022) ("The Second Circuit Fabrizio has held that the passage of 'only six months' is sufficient to support an inference of a causal connection.") (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). Second, Plaintiff claims he has "no violence on [his] record," and two out of the three charges were "dropped." *Id.*; *see Miller, supra*, 2019 WL 11276705, at *5 (factors include "the inmate's prior good disciplinary record" and "vindication at a hearing on the matter").

[10]    "Although there is significant case law to support the contention that temporal proximity alone is insufficient to survive a motion for summary judgment, the same is not true at the motion to dismiss stage." *Hendricks v. Mallozzi*, No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *5 (N.D.N.Y. Jan. 14, 2022) (citations omitted), *report and*

*recommendation adopted*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022). In any event, as discussed here, Plaintiff alleges more than mere temporal proximity from which a causal connection could be inferred. *See* Dkt. No. 33 at 33 at 36-37.

Based on the aforementioned, at this early stage of the litigation, even viewing the allegations "with skepticism and particular care," it is at least "plausible" that Plaintiff was issued the misbehavior report in retaliation for his protected conduct. Thus, the undersigned recommends denying Defendants' motion to dismiss Plaintiff First Amendment claim against Tierney.

## V. CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion, Dkt. No. 25, be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's First Amendment retaliation claim against Tierney, in addition to Plaintiff's Fourteenth Amendment due process claim against Tierney and Morrow, proceed to discovery; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [11] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[11] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1033687

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 841475

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Bernard J. SORRENTINO, Plaintiff,

v.

TIERNEY and Morrow,[1] Defendants.

[1]    The Clerk is directed to update the case caption to reflect that the only remaining defendants are Tierney and Morrow.

9:23-CV-582 (LEK/TWD)

|

Signed March 18, 2025

**Attorneys and Law Firms**

Bernard J. Sorrentino, Wallkill, NY, Pro Se.

Alexandra L. Galus, NYS Office of the Attorney General, Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

**\*1**  Plaintiff Bernard J. Sorrentino brings this pro se action pursuant to 42 U.S.C. § 1983 against, *inter alia*, Defendant Tierney asserting violations of his constitutional rights. Dkt. No. 1. Tierney filed a motion for summary judgment and partial motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies and failed to state a claim. Dkt. No. 25 ("Motion"). On February 13, 2025, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, issued a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), recommending the Motion be denied. Dkt. No. 35 ("Report and Recommendation").

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

## II. BACKGROUND

The Court assumes familiarity with the factual background detailed in the Report and Recommendation. *See* R. & R. at 2–3.

In her analysis, Judge Dancks first recommended denying Defendant's Motion seeking dismissal of Plaintiff's First Amendment retaliation claim for failure to exhaust administrative remedies. *Id.* at 12. While Defendant "satisfied [his] initial burden of demonstrating that a grievance procedure existed, and Plaintiff failed to exhaust his administrative remedies," *id.* at 11, Judge Dancks found that "Plaintiff appears to raise an issue regarding the availability of his administrative remedies," *id.* at 12. Judge Dancks noted that discovery was necessary to provide Plaintiff with the opportunity to support his exhaustion theory. *Id.*

Next, Judge Dancks recommended denying Defendant's Motion seeking dismissal of Plaintiff's First Amendment retaliation claim for failure to state a claim. *Id.* at 15. While Defendant argued that Plaintiff did not establish a causal connection between his "complaints" and the filing of the misbehavior report, Judge Dancks found that Plaintiff satisfied the causation prong. *Id.* at

14. As Judge Dancks noted, "[f]irst, Plaintiff alleges the [ ] misbehavior report followed close in time to Plaintiff['s] complaints." *Id.* Second, Plaintiff had no violence on his record and two charges against him were "dropped." *Id.* Judge Dancks stated that both of these factors support a finding of causation at the motion to dismiss stage. *Id.*

Judge Dancks thus recommended the Motion be denied in its entirety. *Id.* at 16.

## III. LEGAL STANDARD

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *see also* L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation for clear error. *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (cleaned up). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## IV. DISCUSSION

**\*2** No party objected to the Report and Recommendation within fourteen days after being served with a copy of it. Accordingly, the Court reviews the Report and Recommendation for clear error. *See DiPilato*, 662 F. Supp. 2d at 339. Having found none, the Court approves and adopts the Report and Recommendation in its entirety.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 35, is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that the motion for summary judgment and partial motion to dismiss, Dkt. No. 25, is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 841475

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 777268
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stanley HARDEE, Plaintiff,

v.

Correctional Officer J. THOMAS, et al., Defendants.

9:23-cv-1142 (LEK/TWD)
|
Signed February 13, 2025

**Attorneys and Law Firms**

STANLEY HARDEE, Plaintiff, pro se, 13-A-0433, Otisville Correctional Facility, Box 8, Otisville, NY 10963.

OLIVIA R. COX, ESQ., NEW YORK STATE ATTORNEY GENERAL, Attorneys for Defendants, NYS Office of The Attorney General, The Capitol, Albany, NY 12224.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** This matter has been referred for a report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Stanley Hardee ("Plaintiff"), an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983 alleging, while he was incarcerated at Eastern Correctional Facility ("Eastern CF"), Defendants Correctional Officer Jeffrey Thomas, John Doe #1, and John Doe #2, violated his Eighth Amendment Rights. *See generally*, Dkt. No. 1.[1] Currently before the Court is Defendant Thomas' motion for summary judgment. Dkt. No. 22. For the reasons set forth below, the undersigned recommends Defendant Thomas' motion be denied without prejudice.

[1]     Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

## II. BACKGROUND

Plaintiff commenced this action by filing his complaint, along with an application to proceed *in forma pauperis* ("IFP"), with the U.S. District Court for the Southern District of New York on August 30, 2023. *See* Dkt. Nos. 1, 3. On August 31, 2023, the Hon. Laura Taylor Swain, Chief United States District Judge, transferred the action to this District. *See* Dkt. No. 4. By Order dated November 27, 2023, Judge Kahn granted Plaintiff's IFP application and found Plaintiff's: (1) "Eighth Amendment excessive force and failure-to-intervene claims against Defendants Thomas, John Doe #1, and John Doe #2," and (2) "medical indifference claims against Defendants Thomas, John Doe #1, and John Doe #2," arising from an incident occurring on November 4, 2022, were sufficient to survive initial review. Dkt. No. 9 at 13.

Counsel subsequently appeared on behalf of Defendant Thomas. Dkt. No. 19. On May 31, 2024, Defendant Thomas filed a motion for summary judgment, alleging Plaintiff failed to exhaust his administrative remedies before commencing this action.

*See generally*, Dkt. No. 22. Defendant asserted Plaintiff: (1) was housed at Eastern CF from before the November 4, 2022, incident, "until November 28, 2022;" (2) "did not file any facility-level grievances at Eastern between the time period of November and December of 2022;" and (3) "*did not file any grievances related to claims in this action against Defendant Thomas.*" Dkt. No. 22-1 at 2 (emphasis added).

On June 27, 2024, Plaintiff filed his response in opposition to Defendant Thomas' motion. *See generally*, Dkt. No. 28. In his sworn affidavit included therein, Plaintiff asserted, following the November 4, 2022, incident, he "woke up in Eastern CF's Infirmary" and "asked for grievance forms multiple times, and did not receive any." *Id.* at 17-18. Once he was able to obtain a pen and paper, Plaintiff "wrote out a grievance on plain paper, because staff refused to give me a grievance form" and "handed the grievance to a correction officer, within 7 days of the incident." *Id.* at 18. Plaintiff was moved from Eastern CF to Adirondack Correctional Facility ("Adirondack CF") on November 28, 2022, and,

> **\*2**  While at Adirondack CF, I asked multiple staff members about my pending grievance complaining about being assaulted by DOCCS staff. I was told that no grievance was pending. I was directed to write a new grievance at Adirondack CF. I wrote a new grievance, gave it to a correction officer, and within a few days a Sergeant interviewed me about my assault complaint.

*Id.* The Superintendent subsequently issued a decision on Plaintiff's grievance and provided him "2 original appeal forms to fill out. Which I did. I put 1 original copy of the appeal in the mailbox, and saved an original copy for myself." *Id.* at 18-19.

Plaintiff included the copy of the appeal form he saved as an exhibit in his response. *See id.* at 20. The attached document contains a grievance number of "ADK-0091-22," filed "12/7/2022," and states, in part, "the grievant's allegations are unsubstantiated and there is no evidence of staff malfeasance." *Id.* The grievance response document appears to have been signed by the facility's Superintendent and dated "01/03/2023." *Id.* In the portion of the form designated "appeal statement," it appears Plaintiff printed "I wish to Appeal the Decision," signed the document, and indicated a date of "12/8/2022." *Id.* Plaintiff further affirmed he "waited over 8 months for C.O.R.C. to make a final decision on my grievance,"[2] but ultimately did not receive a decision prior to commencing this action. *Id.* at 19.

2    "C.O.R.C." appears to refer to the Central Office Review Committee.

Defendant Thomas submitted a reply on July 8, 2024. *See generally*, Dkt. No. 31. In the letter in further support of his motion for summary judgment, the Defendant avers, "[w]hile it is true that Plaintiff filed a grievance at Adirondack after the twenty-one days to file a grievance expired, it was only accepted because Plaintiff told Adirondack's IGPS that he attempted to file the grievance at Eastern, but was unsuccessful."[3] *Id.* at 1. Defendant asserts "Adirondack's Superintendent issued a response on January 3, 2023 .... [and,] Plaintiff did not appeal the response, despite his claim that he did." *Id.* at 2. The Defendant further argues "Plaintiff's purported 'appeal,' submitted as Exhibit 2 in his opposition papers, is dated December 8, 2022 – the day after the grievance was filed, and approximately one month *before* the Superintendent's response that was purportedly appealed was issued," therefore, "the Court should disregard Plaintiff's claim that he appealed his grievance to CORC, and that his administrative remedies were unavailable to him." *Id.* (emphasis in original, citation omitted).

3    "IGPS" refers to the Incarcerated Grievance Program Supervisor. *See* Dkt. No. 31 at 1.

The Defendant also submitted with his reply a declaration from Erin Kulzer, who began serving as Acting Incarcerated Grievance Program Supervisor at Adirondack Correctional Facility in June of 2023. *See generally*, Dkt. No. 31-1. Kulzer affirmed "a review of the records maintained in the regular course of business by DOCCS indicates that, on December 7, 2022, Plaintiff filed a grievance related to his claims in this action at Adirondack," which was assigned "grievance number ADK-0091-22," and "processed as normal." *Id.* at 3. "A copy of the grievance packet" was included in Kulzer's declaration. *See id.* at 6-21. Kulzer

asserts "[f]ollowing the completion of the investigation, the Superintendent's office issued a response to Plaintiff's grievance on January 3, 2023," which was "mailed to Plaintiff at Clinton Correctional Facility," where he was housed as of that date. *Id.* at 3. Kulzer states, by the language contained on the appeal form, "Plaintiff was advised that he needed to return the executed appeal statement to Adirondack, the facility where the grievance was filed. Had he done so, a copy of the appeal statement would have appeared in our records. It does not." *Id.* at 4. Therefore, "[b]ased upon my review of the file, Plaintiff did not appeal a facility-level grievance determination to CORC related to any of the above-mentioned issues connected to the claims in this action." *Id.*

## III. LEGAL STANDARD

### A. Summary Judgment

**\*3** Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.' " *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). "Whether the plaintiff has exhausted his administrative remedies is a question of law ....
Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu
of an answer." *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *5 (N.D.N.Y. Nov. 17, 2020) (citing
*Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted*,
2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

 **\*4** The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they
involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter
v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money
damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004),
*abrogated on other grounds, Ross v. Blake*, 578 U.S. 632 (2016). Furthermore, "the PLRA exhaustion requirement requires
proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In order to properly exhaust his administrative remedies, an
inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S.
199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).

DOCCS has a well-established Inmate Grievance Program ("IGP"), set forth in 7 N.Y.C.R.R. § 701 *et seq.*

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an
> inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged
> occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution
> Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the
> issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within
> sixteen calendar days of receipt of the grievance and issues a written decision within two working days of
> the conclusion of the hearing. *Id.* §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision
> to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* §
> 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue),
> the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's
> appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to
> the central office review committee ("CORC") for a decision under the process applicable to the third
> step. *Id.* § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of
> the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within
> thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2, 2023) (additional citation
omitted); *see also Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (explaining exhaustion of the grievance procedure
only occurs *after* CORC has rendered its decision).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory
exhaustion." *Ross*, 578 U.S. at 642. Specifically, the exhaustion requirement contained in § 1997e(a) "hinges on the 'availability'
of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.*
(citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a
court may find administrative remedies are not "available" for PLRA purposes, holding:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may
> promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide
> any relief to aggrieved inmates .... Next, an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use .... And finally, ... when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

**\*5** *Id.* at 643-44. In these situations, exhaustion is not required. Additionally, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive ...." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016).

## IV. ANALYSIS

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted). Here, the record is, at best, incomplete as to the availability of administrative remedies at the various DOCCS facilities where Plaintiff was housed following the alleged Eastern CF incident. Because this record "could be made clearer following full discovery ... denial of the Motion at this time is appropriate." *Smith v. Jaynes*, No. 9:18-CV-1107 (DNH/DJS), 2020 WL 1149856, at \*4 (N.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1140665 (N.D.N.Y. Mar. 9, 2020).

Plaintiff's assertions regarding his attempts to submit both his initial grievance and the appeal of the Adirondack CF Superintendent's denial of his alleged second grievance present distinct questions of fact that should not be resolved at this juncture. *See, e.g., Tillman v. Phillips*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at \*9 (N.D.N.Y. Nov. 10, 2021) (explaining, even "[w]here a defendant correctly notes that a plaintiff's versions of events are not completely consistent, this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations .... Therefore, as the exhaustion determination hinges on the question of plaintiff's credibility ... summary judgment is not warranted ....") (internal quotations and citations omitted), *report and recommendation adopted*, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021). "While the Court has the ability to order an exhaustion hearing, ... doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here." *Croney v. Medbury*, No. 9:23-CV-1449 (DNH/DJS), 2024 WL 5294279, at \*4 (N.D.N.Y. Nov. 12, 2024) (citing *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011)), *report and recommendation adopted*, 2024 WL 4986160 (N.D.N.Y. Dec. 5, 2024); *see also, e.g., Smith*, 2020 WL 1149856, at \*4.

Accordingly, the undersigned recommends Defendant Thomas' motion be denied as premature. *See, e.g., Smith*, 2020 WL 1149856, at \*4; *Croney*, 2024 WL 5294279, at \*4.

## V. CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendant Thomas' motion for summary judgment (Dkt. No. 22) be **DENIED** without prejudice to renew after discovery has been conducted; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

4      If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 777268

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 773577

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Stanley HARDEE, Plaintiff,

v.

Correctional Officer J. THOMAS, et al., Defendants.

9:23-CV-1142 (LEK/TWD)

|

Signed March 11, 2025

**Attorneys and Law Firms**

Stanley Hardee, Otisville, NY, Pro Se.

Olivia R. Cox, Anthony Huntley, Nicholas W. Dorando, Office of the Attorney General, Albany, NY, for Defendants.

## MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiff Stanley Hardee brings this pro se action pursuant to 42 U.S.C. § 1983 against Defendant Correctional Officer J. Thomas and two John Does, alleging that Defendants violated his constitutional rights. Dkt. No. 1. Defendant Thomas filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his available administrative remedies. Dkt. No. 22 ("Motion"). On February 13, 2025, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, issued a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), recommending the Motion be denied. Dkt. No. 35 ("Report and Recommendation").

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

## II. BACKGROUND

The Court assumes familiarity with the factual background detailed in the Report and Recommendation. *See* R. & R. at 2–5.

In her analysis, Judge Dancks noted that summary judgment should rarely be granted against a plaintiff before they have an opportunity to conduct discovery. *Id.* at 9 (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs.*, 201 F.3d 94, 97 (2d Cir. 2000)). Judge Dancks stated that "the record is, at best, incomplete as to the availability of administrative remedies at the various DOCCS facilities where Plaintiff was housed." *Id.* As such, Judge Dancks found that "Plaintiff's assertions regarding his attempts to submit both his initial grievance and the appeal ... present distinct questions of fact that should not be resolved at this juncture." *Id.* at 10. Judge Dancks thus recommended the Motion be denied and the case proceed to discovery. *Id.* at 11.

## III. LEGAL STANDARD

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *see also* L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation

for clear error. *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *Rivera v. Fed. Bureau of Prisons*, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (cleaned up). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## IV. DISCUSSION

No party objected to the Report and Recommendation within fourteen days after being served with a copy of it. Accordingly, the Court reviews the Report and Recommendation for clear error. *See DiPilato*, 662 F. Supp. 2d at 339. Having found none, the Court approves and adopts the Report and Recommendation in its entirety.

## V. CONCLUSION

**\*2** Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 35, is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that the Motion for summary judgment, Dkt. No. 22, is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 773577

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2548797

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

James A. ADAMS, Plaintiff,

v.

C.O. M. BERKMAN, et al., Defendants.

9:24-cv-0873 (MAD/TWD)

|

Signed July 11, 2025

**Attorneys and Law Firms**

JAMES A. ADAMS, Plaintiff, pro se, 20-B-1052, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

CHI-HSIN E. ENGELHART, ESQ., NEW YORK STATE ATTORNEY GENERAL, Counsel for Defendants, NYS Office of The Attorney General, State Capitol, Albany, NY 12224.


<u>**REPORT-RECOMMENDATION AND ORDER**</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1**  This matter was referred for a report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently before the Court is Defendants' motion for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 18. For the reasons set forth below, the undersigned recommends Defendants' motion be denied without prejudice.


**II. BACKGROUND** [1]

[1]  Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

*Pro se* plaintiff James A. Adams ("Plaintiff"), an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this civil rights action pursuant to 28 U.S.C. § 1983 asserting allegations of wrongdoing that occurred while he was housed at the Franklin Correctional Facility ("Franklin"). Dkt. No. 1. The following facts are set forth as alleged by Plaintiff in his complaint.

On December 29, 2022, at approximately 7:35 a.m., Plaintiff "entered the messhall for breakfast[.]" *Id*. at 4. While Plaintiff was waiting in line, he questioned the incarcerated individual serving cereal about whether he was serving half or whole "scoop[s.]" *Id*. Plaintiff was then approached by a civilian cook (not a party) who told Plaintiff he was "lucky" she was not serving breakfast because she would have given him less food. *Id*. Plaintiff "told [the civilian cook] like whatever" and walked to his table to sit. *Id*.

As Plaintiff was preparing to sit, defendants Corrections Officer Berkman, Corrections Officer Buckley, Corrections Officer John Doe #1, and Corrections Officer John Doe #2 approached and told Plaintiff to leave the messhall. *Id*. As Plaintiff was

exiting the messhall, he was told to place his hands on the wall. *Id.* After Plaintiff complied with the directive, the four corrections officials "punch[ed]" him in the face, "pulled [him] to the ground and kicked and stomp[ed]" him on the knee. *Id.*

The Court reviewed the complaint in accordance with 28 U.S.C. §§ 1915 and 1915A and found Plaintiff's Eighth Amendment excessive force and failure to intervene claims against defendants Berkman, Buckley, John Doe #1, and John Doe #2 survived initial review and required a response. Dkt. No. 11 at 6-7, 10-11. Counsel subsequently appeared on behalf of defendants Michael Berkman and Patrick Buckley ("Defendants"). Dkt. No. 21.

On November 25, 2024, Defendants filed a motion for summary judgment in lieu of an answer. Dkt. No. 24. Defendants have submitted a memorandum of law alleging Plaintiff failed to exhaust his administrative remedies before commencing this action, Dkt. No. 24-5, a Local Rule 56.1(a) statement, Dkt. No. 24-4, and supporting exhibits, Dkt. Nos. 24-2, 24-3. In response to Defendants' motion, Plaintiff submitted a memorandum of law with exhibits. Dkt. No. 30. Defendants filed a reply. Dkt. No. 31.

**\*2** In support of their motion, Defendants submit sworn declarations from Rachel Seguin, the Director of the Incarcerated Grievance Program ("IGP") for DOCCS, Dkt. No. 24-2, and Donna Wilcox, the Supervisor of the IGP at Franklin, Dkt. No. 24-3, which describe DOCCS' administrative exhaustion process.

As detailed therein, at all relevant times, incarcerated individuals at Franklin were provided with full access to the IGP. Dkt. Nos. 24-2 at ¶ 11, 24-3 at ¶ 19. Plaintiff's claims that Defendants used excessive force on him are the proper subject for a grievance. Dkt. Nos. 24-2 at ¶ 10, 24-3 at ¶ 18. DOCCS records maintained at Franklin and the Central Office Review Committee ("CORC") show Plaintiff did not file a grievance as to any incident of excessive force which took place on December 29, 2022, nor was a grievance appealed to CORC. Dkt. No. 24-2 at ¶ 13, 24-3 at ¶ 23. Thus, Defendants contend summary judgment is warranted and Plaintiff's Eighth Amendment excessive force and failure to intervene claims are subject to dismissal for failure to exhaust administrative remedies before commencing this action. Dkt. Nos. 24-2 at ¶ 15, 24-3 at ¶ 26, 24-5 at 5-9.

In his opposition submission, Plaintiff appears to raise two arguments. *See generally* Dkt. No. 31. Plaintiff argues administrative remedies were not available to him because on January 4, 2023, while housed in the SHU at Franklin, Plaintiff filed two grievances "but did not get a response." *Id.* at 2, 4. Plaintiff also maintains he exhausted the administrative remedies that were "available" to him because after not hearing back, he followed the "second step" and appealed to the superintendent on January 12, 2023, and then "followed up" and "appealed" to CORC. *Id.* at 4, 5, 11. He "also appealed the grievance at Franklin" and "at the Upstate Correctional Facility" ("Upstate"). *Id.* at 4. On February 14, 2023, after not hearing back again, Plaintiff wrote a letter to CORC appealing the Superintendent's Response. *Id.* at 4, 6-7. Plaintiff attaches a "copy of his appeals that he sent to the (CORC) along with his complaint that was also sent to (CORC) that was mailed on 2-14-23." *Id.* at 5, *see id.* at 6-7. Plaintiff eventually received correspondence from CORC that on March 17, 2023, the Superintendent's Hearing of January 12, 2023, was affirmed. *Id.* at 4, 10. The Superintendent's Hearing of February 2, 2023, at Upstate was affirmed on April 7, 2023. *Id.* at 9.

In their reply, Defendants argue Plaintiff conflates an appeal of his purported grievance with an appeal of his disciplinary disposition. Dkt. No. 31 at 3. Defendants reason a "plain reading" of the evidence Plaintiff contends purports to demonstrate his appeal of the alleged grievance was instead an appeal of the Superintendent's Hearing conducted on January 12, 2023, at Franklin related to the December 29, 2022, incident. *Id.* at 3-5; *see* Dkt. No. 30 at 9, 11. Defendants maintain "[s]uch submission not only establishes that Plaintiff was able to appeal administrative proceedings inside the facility but also shows that, rather than being unable to appeal an alleged grievance, Plaintiff simply did it wrong. And Plaintiff's mistaken belief as to how to appeal a grievance does not relinquish the statutory requirement that he *properly* exhaust his administrative remedies." Dkt. No. 31 at 5.

**\*3** Moreover, to the extent Plaintiff claims the "grievance wasn't available to him when he filed a grievance at the Franklin Corr Facility," Dkt. No. 30 at 4, Defendants note "such claim is internally inconsistent with his claims of actual appeals and wholly conclusory without any 'documentary evidence' or 'minimal corroborative details.' " Dkt. No. 31 at 6. Accordingly, Defendants argue summary judgment should be granted because Plaintiff failed to *properly* exhaust his administrative remedies

before commencing this action and, therefore, Plaintiff's Eighth Amendment excessive force and failure to intervene claims should be dismissed with prejudice. *Id.*

## III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.' " *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

**\*4** In applying the summary judgment standard, the court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Incarcerated individuals must exhaust their

administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds, Ross v. Blake*, 578 U.S. 632 (2016).

Furthermore, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In order to properly exhaust his or her administrative remedies, an incarcerated individual must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).

DOCCS has a well-established three-step administrative review process, set forth in 7 N.Y.C.R.R. § 701 *et seq*.

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an [incarcerated individual] must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's [Incarcerated] Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to [CORC] for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

**\*5** *Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at \*3 (N.D.N.Y. Mar. 2, 2023) (additional citation omitted). "If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983." *Johnson v. Mason*, No. 9:22-cv-590 (MAD/CFH), 2024 WL 396679, at \*3 (N.D.N.Y. Feb. 2, 2024) (citation omitted); *see also Animashaun v. Toohill*, No. 9:21-CV-372 (MAD/TWD), 2025 WL 843771, at \*3 (N.D.N.Y. Mar. 18, 2025) ("Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court.") (citations omitted); *see also Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (explaining exhaustion of the grievance procedure only occurs *after* CORC has rendered its decision).

"There is an expedited procedure for grievances that allege 'employee harassment,' that is 'employee misconduct meant to annoy, intimate or harm an inmate.' " *Bradshaw v. Fletcher*, No. 9:19-CV-00428 (BKS/TWD), 2021 WL 248236, at \*2 (N.D.N.Y. Jan. 26, 2021) (quoting 7 N.Y.C.R.R. §§ 701.8, 701.2(e)). "When the grievance clerk identifies a harassment grievance, the clerk must forward the grievance to the superintendent on the same day that the grievance was filed." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 119-20 (2d Cir. 2016) (quoting 7 N.Y.C.R.R. § 701.8(b)). Although "such grievances are forwarded directly to the prison superintendent, bypassing the IGRC review" they still must first be submitted as a grievance to the grievance clerk. *Bradshaw*, 2021 WL 248236, at \*2 (citing 7 N.Y.C.R.R. § 701.8(b)(c)). The superintendent has twenty-five days from receipt of the grievance to render a decision, and that decision may be appealed to CORC within seven days of the receipt of the decision. 7 N.Y.C.R.R. §§ 701.8(f), (h); *see also Jackson v. Moore*, No. 9:21-CV-1001 (GTS/ATB), 2023 WL 4710869, at \*3 (N.D.N.Y. Apr. 14, 2023) ("Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any

negative determination to the CORC.") (citation omitted). Completing the administrative appeal process satisfies the exhaustion requirement. *See Bradshaw*, 2021 WL 248236, at *2.

"A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015); *see also Bowie v. Woodruff*, No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078, at *5 (N.D.N.Y. Sept. 20, 2019), *report-recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019). "When a prisoner does not properly exhaust his administrative remedies before filing suit, the action must be dismissed." *Mateo v. Alexander*, No. 08 Civ. 8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Specifically, the exhaustion requirement contained in § 1997e(a) "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* (citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes, holding:

> **\*6** [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates .... Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use .... And finally, ... when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id.* at 643-44. In these situations, exhaustion is not required. Additionally, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive ...." *Williams*, 829 F.3d at 124 n.2. Whether remedies are available is "an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311-12 (2d Cir. 2020) (citation omitted).

The failure to exhaust administrative remedies is an affirmative defense. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (explaining that defendants bear the burden of proof, but plaintiffs can overcome a showing of non-exhaustion by putting on their own evidence). Thus, a defendant must first show that a grievance process governs the dispute at issue and that a plaintiff has failed to exhaust it. *Id.* In response, a plaintiff can show either exhaustion or unavailability as outlined in *Ross* and its progeny. *See Booker v. Flint*, No. 9:22-CV-600 (AJB/DJS), 2025 WL 1663999, at *3 (N.D.N.Y. June 12, 2025).

### B. Analysis

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted). Here, the record is, at best, incomplete as to the availability of Plaintiff's administrative remedies following the alleged December 29, 2022, incident. There are certainly issues that call for further factual development. Because this record "could be made clearer following full discovery ... denial of the Motion at this time is appropriate." *Smith v. Jaynes*, No. 9:18-CV-1107 (DNH/DJS), 2020 WL 1149856, at *4 (N.D.N.Y. Feb. 4, 2020), *report-recommendation adopted*, 2020 WL 1140665 (N.D.N.Y. Mar. 9, 2020).

Liberally construed and drawing all reasonable inferences in the non-moving party's favor, Plaintiff's opposition suggests he submitted two grievances on January 4, 2023, while housed in the SHU at Franklin but the grievances were unfiled and unanswered.[2] Dkt. No. 4 at 2, 4-5. The Second Circuit has held that when a grievance goes unfiled and unanswered, "the process to appeal ... is prohibitively opaque such that no inmate could actually make use of it." *Williams*, 829 F.3d at 126. The Court recognizes Plaintiff has not provided any further evidence substantiating his efforts to file these supposed grievances.[3] In some

instances, as Defendants argue, courts have found allegations are insufficient to overcome a properly supported motion for summary judgment. *See* Dkt. No. 31 at 6 (collecting cases). But unlike the case at bar, those cases were decided *after* discovery.

2    *See McLean v. LaClair*, No. 9:19-CV-1227 (LEK/ATB), 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021) ("Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it."); *Fann v. Graham*, No. 15-CV-1339 (DNH/CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies[.]"), *report-recommendation adopted*, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); *Thaxton v. Simmons*, No. 10-CV-1318, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact."); *see also Woodward v. Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4-5 (N.D.N.Y. Sept. 27, 2018) (finding an issue of fact as to the availability of the grievance process where plaintiff drafted and submitted a grievance that was never filed or answered) (collecting cases).

3    Indeed, as Defendants points out, the evidence Plaintiff has submitted strongly suggests Plaintiff appealed the disciplinary proceeding related to the alleged December 29, 2022, incident. Dkt. Nos. 30 at 6-11, 31 at 4-5. "Though a disciplinary appeal is sufficient to exhaust a claim that [the p]laintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.' " *Barker v. Smith*, No. 16-CV-76, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003)).

**\*7** "Because Plaintiff has not yet had an opportunity to conduct discovery to support his exhaustion theory, the Court finds Defendants' request for summary judgment premature." *Johnson v. Owens*, No. 9:20-CV-0982 (LEK/CFH), 2022 WL 958127, at *4 (N.D.N.Y. Mar. 30, 2022) (collecting cases); [4] *see Murray v. Noeth*, No. 6:19-CV-6342, 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022) ("[A]t this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve [the exhaustion] issue just based on the papers."); *see also Croney v. Russell*, No. 9:23-CV-1188 (DNH/PJE), 2025 WL 1089520, at *3 (N.D.N.Y. Feb. 25, 2025) ("Summary judgment is a 'drastic device' and 'should not be granted when there are major factual contentions in dispute[,] ... particularly ... when, as here, one party has yet to exercise its opportunities for pretrial discovery.' ") (alterations in original) (quoting *Nat'l Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975)), *report-recommendation adopted*, 2025 WL 854718 (N.D.N.Y. Mar. 19, 2025).

4    *See, e.g.*, *Young-Flynn v. Wright*, No. 05-CV-1488, 2007 WL 241332, at *13 (S.D.N.Y. Jan. 26, 2007) (finding summary judgement premature even where the "Court ha[d] some doubt that Plaintiff's only described efforts toward exhaustion could ultimately be found sufficient to overcome the exhaustion requirement' because discovery had not yet been conducted"); *see also Tillman v. Phillips*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021) (explaining, even "[w]here a defendant correctly notes that a plaintiff's versions of events are not completely consistent, this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations .... Therefore, as the exhaustion determination hinges on the question of plaintiff's credibility ... summary judgment is not warranted ....") (internal quotations and citations omitted), *report-recommendation adopted*, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021).

In the alternative to summary judgment, Defendants request an evidentiary hearing on the issue of exhaustion pursuant to *Messa v. Goord*, 652 F.3d. 305 (2d Cir. 2011). Dkt. Nos. 24-5 at 9, 31 at 7. However, "doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here." *Croney v. Medbury*, No. 9:23-CV-1449 (DNH/DJS), 2024 WL 5294279, at *4 (N.D.N.Y. Nov. 12, 2024), *report-recommendation adopted*, 2024 WL 4986160 (N.D.N.Y. Dec. 5, 2024). [5]

5    Recently, the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Perttu v. Richards*, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025). At this juncture, it does not appear the exhaustion question is intertwined with Plaintiff's Eighth Amendment excessive force and failure to intervene claims at issue and, therefore, an evidentiary hearing before the Court may be appropriate after discovery.

Accordingly, the undersigned recommends Defendants' motion for summary judgment be denied without prejudice. *See, e.g.*, *Smith*, 2020 WL 1149856, at *4; *Croney*, 2024 WL 5294279, at *4.

## V. CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 24) be **DENIED** without prejudice and with leave to renew after discovery has been conducted; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

 **\*8**  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

6    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 2548797

---

**End of Document**                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2318706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James A. ADAMS, Plaintiff,

v.

Michael BERKMAN, Patrick Buckley, John Doe #1, and John Doe #2, Defendants.

9:24-CV-873 (MAD/TWD)
|
Signed August 12, 2025

**Attorneys and Law Firms**

JAMES A. ADAMS, 20-B-1052, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562, Pro se Plaintiff.

CHI-HSIN E. ENGLEHART, AAG, OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, The Capitol, Albany, New York 12224, Attorney for Defendants.

## ORDER

Mae A. D'Agostino, United States District Judge:

 **\*1** Plaintiff filed a *pro se* complaint in the United States District Court for the Southern District of New York on June 12, 2024, alleging that Defendants Michael Berkman, Patrick Buckley, and two other corrections officers used excessive force against Plaintiff and failed to intervene in that use of force while he was incarcerated at Franklin Correctional Facility ("Franklin C.F."). *See* Dkt. No. 1. The case was transferred to this Court on July 12, 2024. *See* Dkt. No. 4. Plaintiff moved to proceed *in forma pauperis. See* Dkt. Nos. 6, 7, 9, 12.

On August 21, 2024, Magistrate Judge Therese Wiley Dancks issued a Decision and Order granting Plaintiff's motion to proceed *in forma pauperis* and permitting his Eighth Amendment excessive force and failure-to-intervene claims to proceed. *See* Dkt. No. 11. On October 31, 2024, counsel for the named Defendants appeared in the action. *See* Dkt. No. 21.

On November 25, 2024, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 24. Magistrate Judge Dancks stayed Defendants' answer deadline pending resolution of the motion. *See* Dkt. No. 25. Plaintiff responded in opposition to the motion, *see* Dkt. No. 30, and Defendants replied. *See* Dkt. No. 31.

On July 11, 2025, Magistrate Judge Dancks issued a Report-Recommendation and Order recommending that Defendants' motion be denied without prejudice and with leave to renew after discovery has been conducted. *See* Dkt. No. 33. Both parties filed objections. *See* Dkt. Nos. 34, 35.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to

accept the recommendation.' " *Taylor v. Astrue*, 32 F. Supp. 3d 253, 261 (N.D.N.Y. 2012) (quotation and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review his filings under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

**\*2**  In a single paragraph, Plaintiff objects to Magistrate Judge Dancks' recommendation that Defendants' motion for summary judgment be dismissed without prejudice and with leave to renew. *See* Dkt. No. 35. Plaintiff argues the motion should be denied with prejudice. *See id.* Plaintiff's objection is wholly conclusory and will be reviewed for clear error. Defendants, however, raise specific objections to Magistrate Judge Dancks' Report-Recommendation and Order such that the issues they raise will be reviewed de novo. *See* Dkt. No. 34.

Having reviewed the July 11, 2025, Report-Recommendation and Order, the parties' filings, and the applicable law, the Court agrees with Magistrate Judge Dancks that Defendants' motion for summary judgment must be denied without prejudice and leave to renew.

Magistrate Judge Dancks thoroughly set forth the factual background, legal standard, and statutory framework applicable to Defendants' motion. *See* Dkt. No. 33 at 2-11. Neither party objects to Magistrate Judge Dancks' recitation of the law and the facts, the Court finds no clear error in that recitation, and the Court assumes the parties' familiarity with the same. *See* Dkt. Nos. 34, 35.

As to Magistrate Judge Dancks' conclusion, the Court entirely agrees that Defendants' motion for summary judgment must be denied without prejudice and with leave to renew. The Court agrees with Magistrate Judge Dancks that "[v]iewing the facts in the light most favorable to [P]laintiff, the record suggests that [P]laintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available[.]" *Fann v. Graham*, No. 9:15-CV-1339, 2018 WL 1399331, \*6 (N.D.N.Y. Jan. 11, 2018); *see also* Dkt. No. 33 at 11-12. Magistrate Judge Dancks also correctly concluded that it would not be appropriate to order an exhaustion hearing at this time because the parties have not conducted any discovery. *See* Dkt. No. 33 at 11-13; *see also Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of case may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery"); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Croney v. Medbury*, No. 9:23-CV-1449, 2024 WL 5294279, \*4 (N.D.N.Y. Nov. 12, 2024); *Hardee v. Thomas*, No. 9:23-CV-1142, 2025 WL 777268, \*5 (N.D.N.Y. Feb. 13, 2025).

Plaintiff did not discuss the exhaustion of his administrative remedies in his complaint; rather, he only discussed the alleged December 29, 2022, assault at Franklin C.F. which is the basis for his constitutional claims. *See* Dkt. No. 1. Defendants did not answer the complaint and, therefore, did not raise a non-exhaustion affirmative defense. Instead, they moved for summary judgment on non-exhaustion grounds. *See* Dkt. No. 24. Defendants submitted a declaration from the Director of the Incarcerated Grievance Program (the "Director"), wherein the Director attested that Plaintiff did not appeal any grievances related to the alleged December 29, 2022, assault. *See* Dkt. No. 24-2. The Director also declared that "Plaintiff has not previously appealed any grievances to" the Central Office Review Committee ("CORC"). *Id.* at ¶ 14. Defendants likewise provided the Court with a declaration from an employee at Franklin C.F. who stated that Plaintiff did not file any grievances related to the alleged assault. *See* Dkt. No. 24-3.

In his response to Defendants' summary judgment motion, Plaintiff stated he "filed two grievances [a]t the Franklin Correctional Facility and [n]ever got[ ] a response." Dkt. No. 30 at 2. Plaintiff explained that he filed a grievance at Franklin C.F. while he was housed in the Special Housing Unit ("SHU") and appealed to the Superintendent on January 12, 2023, when he did not receive a response. *See id.* at 4. He asserts he "also appealed the Superintendent['s] response at the Upstate Correctional Facility [("Upstate C.F.")] on February 2, 2023." *Id.* Later in his response, Plaintiff specifies that he filed an initial grievance on January 4, 2023. *See id.* at 5. He states he mailed his "appeals" to CORC on February 14, 2023. *Id.*

**\*3** Plaintiff attached to his response a handwritten letter to CORC at Upstate C.F., dated February 14, 2023, wherein he discusses the alleged assault at Franklin C.F. on December 29, 2022. *See id.* at 6. In the letter, Plaintiff states, "I grievance [sic] this issue at Franklin Correctional Facility. I filed two grievance [sic] at Franklin Corr. and I didn't get no [sic] response back. I also appeal [sic] to the Superintendent at the Franklin Corr. Facility and I haven't gotten a response back." *Id.* at 7. Plaintiff provided the Court with a copy of two decisions reviewing Superintendent's hearings, *see id.* at 9-10, and an appeal concerning a Superintendent's hearing. *See id.* at 11.

Defendants object to Magistrate Judge Dancks' conclusion that this information provided by Plaintiff is sufficient to deny Defendants' summary judgment motion. *See* Dkt. No. 34. Defendants argue there is "no dispute that a grievance was never filed or appealed to CORC concerning the alleged excessive force incident on December 29, 2022." *Id.* at 5. Defendants contend that despite Plaintiff being given notice and an opportunity to respond regarding exhaustion, "[c]onspicuously missing from the additional evidence submitted by Plaintiff are any copies of the grievances he allegedly filed on January 4, 2023, at Franklin Correctional Facility, or regulation-compliant grievance appeals." *Id.* at 7. They argue that Plaintiff's response "plainly shows that he conflated the grievance process with the administrative appeal of his disciplinary hearings, and he did not properly file a grievance regarding the allegations in this case." *Id.* at 8. Defendants fault Plaintiff for not having "any copies of paperwork associated with the grievance program at all." *Id.* at 9. Alternatively, Defendants argue that if the Court disagrees with them and denies their motion, then discovery should be limited to only the exhaustion issue and a hearing should be held. *See id.* at 10.

"Although failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaints, ... [d]ismissal for failure to exhaust is appropriate when on the face of the complaint, it is clear that a plaintiff did not exhaust administrative remedies[.]" *Blackwood v. Westchester Cnty.*, No. 23-CV-1297, 2024 WL 4290251, \*4 (S.D.N.Y. Sept. 25, 2024), *appeal dismissed* (Dec. 2, 2024) (quoting *Valde-Cruz v. Russo*, No. 20-CV-9240, 2024 WL 809903, \*5 (S.D.N.Y. Feb. 27, 2024)) (additional quotations and quotation marks omitted); *see also Donohue v. Manetti by Armor Corr. Health Servs.*, No. 2:15-CV-636, 2025 WL 974347, \*9 (E.D.N.Y. Mar. 31, 2025) ("The Second Circuit has held that the defense of failure to exhaust available administrative remedies is an affirmative defense that is waivable, specifically under the PLRA") (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).

"[W]here ... nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted to one for summary judgment limited to the narrow issue of exhaustion ... or whether exhaustion might be, in very limited circumstances, excused." *Blackwood*, 2024 WL 4290251, at \*6 (quoting *Hall v. Annucci*, No. 19-CV-5521, 2021 WL 4392526, \*10 (S.D.N.Y. Sept. 24, 2021)) (additional quotations and quotation marks omitted). "[I]n the context of exhaustion under the PLRA, courts usually insist upon limited discovery before converting a 12(b)(6) motion into a motion for summary judgment." *Id.* " 'Discovery is not necessary, however, when the facts regarding plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome.' " *Id.* (quoting *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, \*7 (S.D.N.Y. Mar. 6, 2020)).

**\*4** Nevertheless, " '[s]ince summary judgment is a drastic device, it should not be granted when there are major factual contentions in dispute. This is particularly so when ... one party has yet to exercise its opportunities for pretrial discovery.' " *Johnson v. Mason*, No. 9:22-CV-590, 2024 WL 396679, \*6 (N.D.N.Y. Feb. 2, 2024) (quoting *Nat'l Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975)) (citations and quotation marks omitted). " '[S]ummary judgment should only be granted if after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " *Id.* (quoting *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir.

2025 WL 2318706

2018)) (additional quotation omitted). " 'The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment.' " *Id.* (quoting *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)) (additional quotation and quotation marks omitted).

In their summary judgment motion, Defendants did not argue that "on the face of the complaint, it is clear that a plaintiff did not exhaust administrative remedies[.]" *Blackwood*, 2024 WL 4290251, at *4 (quotation and quotation marks omitted); *see also* Dkt. No. 24-5. Defendants argued in their reply that Plaintiff's response to their motion was "wholly conclusory without any 'documentary evidence' or 'minimal corroborative details.' " Dkt. No. 31 at 6 (citations omitted). However, without an opportunity to conduct limited discovery, it is generally more difficult for a *pro se* plaintiff to submit sufficient evidence to rebut a counseled motion.

In their objections, Defendants assert "[e]ither Plaintiff deliberately failed to attach them, or he could not do so because he did not have such copies. Likewise, further discovery would not change the fact that there are no grievances or appeals on file related to Plaintiff's claim of excessive force on December 29, 2022." Dkt. No. 34 at 9. Defendants have not presented any case law which stands for the proposition that a genuine dispute of fact will only be raised if a plaintiff files copies of his purported grievance(s). *See id.* at 8-9.

Defendants are correct "that a district court may issue a '*sua sponte* dismissal of [a prisoner's] complaint for failure to exhaust his administrative remedies'—even 'before [the] defendants were served'—as long as it provides the [incarcerated individual] 'notice and an opportunity to respond.' " *Moore v. Booth*, 122 F.4th 61, 68-69 (2d Cir. 2024) (quoting *Mojias v. Johnson*, 351 F.3d 606, 608-11, n.1 (2d Cir. 2003)); *see also* Dkt. No. 34 at 4. However, the Second Circuit has found a dispute of fact where "the plaintiff alleged that, while housed in the SHU, he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf," "the plaintiff was transferred to a different facility," and "the plaintiff in *Williams* also supported his allegation of unavailability 'by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [ ] subsequent follow-up conversations occurred.' " *Smith v. Dodge*, No. 9:18-CV-1066, 2022 WL 19771697, *9 (N.D.N.Y. Jan. 19, 2022) (quotation omitted); *see Williams v. Corr. Officer Priatno*, 829 F.3d 118, 120-21 (2d Cir. 2016).

Here, Plaintiff responded to Defendants' motion with a copy of an appeal he submitted to CORC which referenced two prior grievances he filed while housed in the SHU. *See* Dkt. No. 30 at 6-7. This directly conflicts with Defendants' motion which contains affidavits attesting that Plaintiff has never filed a single appeal with CORC. *See* Dkt. No. 24-2 at ¶ 14. This creates a genuine dispute as to whether Plaintiff filed any grievances or appeals concerning the alleged assault.

 **\*5**  Both Magistrate Judge Dancks and Defendants note that Plaintiff's reference to, and exhibit regarding, Superintendent's hearings, are irrelevant to the grievance procedure. *See* Dkt. No. 33 at 4; Dkt. No. 34 at 8. This Court agrees. *See Labounty v. Johnson*, 253 F. Supp. 2d 496, 501 (W.D.N.Y. 2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for an Eighth Amendment claim, even if the hearing is based on the same set of facts underlying the grievance") (collecting cases). However, Plaintiff's statements in his response, claiming that he filed grievances concerning the alleged assault, and his attached appeal to CORC stating that he filed grievances, is enough for Plaintiff, as a *pro se* incarcerated individual, to raise a genuine dispute as to whether he exhausted available administrative remedies.

It is also noteworthy that Plaintiff stated in his response that he was in the SHU at the time he purportedly filed his grievances at Franklin C.F. *See* Dkt. No. 30 at 4. "The court recognizes that an inmate-plaintiff's ability to process his grievances are curtailed to some extent while confined to the SHU." *Simpson v. Price*, No. 9:19-CV-1413, 2021 WL 7367083, *9 (N.D.N.Y. Dec. 29, 2021) (citing *Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, *7 (N.D.N.Y. May 9, 2017)). Defendants do not acknowledge this. *See* Dkt. Nos. 24-5, 34.

Based on the foregoing, the Court concludes that Plaintiff has raised a genuine dispute that forecloses Defendants' summary judgment motion at this juncture. None of this is to say that Defendants cannot be successful on their exhaustion argument. As

2025 WL 2318706

Magistrate Judge Dancks stated, "Plaintiff has not provided [ ] further evidence substantiating his efforts to file these supposed grievances.... In some instances, as Defendants argue, courts have found such allegations are insufficient to overcome a properly supported motion for summary judgment." Dkt. No. 33 at 12 (citation and footnote omitted). However, "those cases were decided *after* discovery." *Id.*

The Court recognizes Defendants' efforts to comply with its previous guidance "that exhaustion issues be 'raised at the earliest possible moment,' " Dkt. No. 34 at 5 (quoting *Animashaun v. Toohill*, No. 9:21-CV-372, 2025 WL 843771, *8 (N.D.N.Y. Mar. 18, 2025)), but the Second Circuit has instructed that " 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.' " *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). As Defendants acknowledge, it is common practice in district courts across the Second Circuit to permit parties to conduct limited discovery on the issue of exhaustion in cases filed by incarcerated individuals. *See* Dkt. No. 34 at 10; *see, e.g.*, *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, *5 (S.D.N.Y. Feb. 8, 2017); *Jones v. Sposato*, No. 16-CV-5121, 2017 WL 4023135, *6 (E.D.N.Y. Aug. 22, 2017); *Sweet v. Wende Corr. Facility*, 253 F. Supp. 2d 492, 496 (W.D.N.Y. 2003). Therefore, it might be more efficient for the parties and the Court, and fairer to *pro se* litigants, if an affirmative exhaustion defense is raised first in an answer, followed by a prompt request to conduct limited discovery on the exhaustion issue prior to moving for summary judgment.

In this case, the Court agrees with Magistrate Judge Dancks that the *pro se* Plaintiff has raised a dispute sufficient to deny Defendants' summary judgment motion, but that leave to renew after discovery is warranted. Plaintiff's argument that his "claims of exhaustion and unavailability are substantiated and" the motion should be denied with prejudice is incorrect. Dkt. No. 35 at 1. Plaintiff has submitted enough information to raise a question about whether administrative remedies were available to him and whether he exhausted those remedies. He has not, however, established as a matter of law, that he did exhaust his administrative remedies.

**\*6** Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order (Dkt. No. 33) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 24) is **DENIED with leave to renew**; and the Court further

**ORDERS** that the case be referred to Magistrate Judge Dancks to reset Defendants' answer deadline and facilitate the completion of discovery on the limited issue of exhaustion; and the Court further

**ORDERS** that, at such time as discovery on the exhaustion issue has been completed, Defendants shall request permission from Magistrate Judge Dancks to file a renewed motion for summary judgment and/or to hold an exhaustion hearing; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2318706

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.